Staples J.
delivered the opinion of the court.
The inquisition finds that Solomon Haunstein died seized of an estate of inheritance in the lots in controversy ; that he died intestate and without heirs, and that there is no person known to the jurors to he entitled to the same; but that said lots have been sold by a decree of the circuit court of Henrico county to satisfy an office judgment obtained against th'e estate of Solomon Haunstein since his death, and that there are now certain parties in possession of said lots claiming under said decree.
It is proper further to state, though it is not part of the inquisition, that the decree referred to, was rendered on the 29th April 1867, in a suit brought, or purporting to have been brought, by William Gleason, assignee of John W. Thompson, against Richard D. Sanxay, curator of the estate of Solomon Haunstein. Ho copy of the bill, or of any exhibit in the record of that suit is filed in this. It does not appear that any order of publication was ever made in the cause, or that there was any party defendant other than Sanxay the curator. It would seem that the bill and answer were filed on the same day, and on that day the cause was brought on for a hearing by consent, and a decree rendered for a sale of the lots now in controversy.
Upon this state of facts we are to determine what are the rights of the purchasers under that decree. In order to arrive at a satisfactory conclusion upon that point, it becomes necessary to inquire what was the precise status of the real estate of Solomon Haun *296 stein upon Ms dying intestate and without heirs. Was the title thereto immediately vested in the commonwealth, or was an inquest necessary to effect that object.
It is well settled that an alien may take lands by grant. But while he has capacity to take, he has none to hold, and the lands may at once be seized to the use of the state. But until they are so seized, the alien has complete dominion over them, and his title cannot be divested except upon office found.
And so if lands are devised to an alien, he acquires a complete though a defeasible title by virtue of the devise;'and this title can only be taken away by an inquest of office, which must be perfected by entry or seizure where the possession is not vacant.
In these cases, and there may be others, it seems that the inquisition is necessary, to vest a complete and perfect title in the state.
An alien cannot, however, take by descent, because the law will never cast the freehold upon one who is incapable of holding, and as the freehold can never be kept in abeyance for an instant, in such cases it vests immediately in the state without inquest of office.
Bor the same reason, if an alien dies intestate, or a citizen dies without inheritable blood, his lands belong to the state. They vest immediately without office found. They sink back into their original condition of common property for the general benefit. The rule on this subject is thus laid down by Chancellor Kent in 4 Vol. Com., page 423: “ It is a general principle in the American law, and which I presume is everywhere declared and asserted, that w|L§n_the title to land fails from a defect of heirs, it necessarily~re~ verts to the people, as forming the common stock to which the whole community is entitled. Whenever *297 the owner dies intestate, without leaving any inheritable blood, or if the relatives he leaves are aliens, there is a failure of competent heirs, and the land vests immediately in the state by operation of law. Ho inquest of office is necessary in such case.
In Montgomery v. Dorion, 7 New Hamp. R. 475, a well considered case, the following propositions are laid down.
“If an alien purchase lands and die, the lands instantly vest by escheat in the state, without any inquest of office. But while the alien lives, the lands cannot vest in the state without office found.
“In this state (Hew Hampshire) the lands of which a citizen dies seized, without heirs, revert in all cases to the state; provided he dies intestate. Upon principle, it would seem that lands must in such a case vest immediately in the state without any inquest of office, as they do in England in the crown when the king’s tenant dies without heirs.
“There might be cases in which an inquest of office might be expedient, as where one person is found in possession, claiming as heir or otherwise; but an inquest of office is in no such case essential to vest the title in the state.”
In support of these positions numerous other authorities might be quoted; but a simple reference to the cases is all that is necessary. Mooers v. White, 6 John. Ch. R. 360; Jackson v. Beach, 1 John. Cases 399; Stevenson and wife v. Dunlap’s heirs, 7 Monr. R. 134; Fry v. Tucker, 2 Dana R. 38; Johnson v. Hart, 3 John. Cases 322; Collingwood v. Pace, 1 Sid. R. 193; Stokes v. Dawes, 4 Mason R. 268; Fairfax’s devisee v. Hunter’s lessee, 7 Cranch R. 663; O’Hanlin v. Den, 1 Spencer’s R. 31; White v. White, 2 Metc. (Ken.) R. 185; Hinkle’s lessee v. Shadden, 2 Swan’s R. 46.
*298 ■ The case of Commonwealth v. Hite, 6 Leigh 588, is-not, in conflict with these authorities. That was ainformation for intrusion on land of the commonwealth. Being in the nature of an action of trespass quare clausam fregit, it will not be maintained except in the case of actual possession. And the chief, if' not the only question, was, whether the effect of an inquisition of office was to vest the possession in the state. It was held by this court, that when the possession of escheated lands is vacant at the time of' office found, the effect of that proceeding is at once to vest the state with possession. If the possession is-not vacant, it does not become so vested, and an entry or seizure by the state is essential in order to maintain an information for intrusion. This was the sole point decided by the court. It is very true that some expressions fell from Judge Tucker to the effect that the crown can only take by matter of record. All of which is strictly accurate as applied to an alien claiming by grant or by devise. He is in by title, having-the freehold, which can only be divested by some act in the nature of a judicial proceeding: Because the-king may not enter upon or seize any man’s possession upon bare surmises, without the intervention of a jury.
But as, according to the common law, lands cannot be in abeyance or without an owner even for a single minute, it follows necessarily that upon the death of' the person last seized, without heirs capable of inheriting, the title must immediately vest in the state without office found.
The doctrine of escheat is originally derived from the old feudal law. An inquisition does not constitute an escheat. It is simply the means by which the state furnishes authentic record evidence of her title. The word escheat is derived from the French, and properly *299 signifies the falling of the lands by accident to the lord of whom they are holden, in which case the fee is said to be escheated. It is a species of reversion by which, upon the death of the tenant without heirs, the, lord becomes entitled to the estate. While at common law a writ of escheat was necessary to vest the estate in the lord, when the king became entitled upon the death of the tenant without heirs capable of inheriting, no office was necessary; but he might enter and seize without judicial proceeding, because in such cases the freehold was cast upon him by law in actual possession.
In this country the doctrine of escheat rests upon the broad principle, that when the title to land fails from defect of heirs, or when from any cause there ceases to be an individual proprietor of the land, it reverts back to the community. 1 Lomax’s Digest 774, 777; 3 Green’s Cruise on Real and Per. Property 213. In such eases, the title being in the state upon the death of the owner, no inquest of office is necessary.
If the possession be vacant at the death of the owner, both title and possession are at once transferred to the state. If, on the contrary, the land be held by adversary possession, the state must enter by her officers. Such an entry may perhaps be necessary to enable the state to make a valid grant of the land, or to maintain an information for intrusion; but it is not essential to the title, any farther than possession is to be considered an element of title.
The state, of course, takes the lands subject to any liens created by the owner, and also to any valid debts contracted by him. But so does the heir, if there is one. This title is none the less complete, because perchance the land may be taken to satisfy the claims of creditors.
*300 In the case before us, upon the death of Solomon Haunstein intestate, without heirs, his real estate became vested eo instanti in the state; the possession being vacant, was also transferred along with the title. Whoever entered into the possession, did so in subordination to her title. When therefore the jury of inquest found that certain persons were in possession of the lots at the time of the inquisition, which was more than two years after the death of the owner, they found an immaterial fact, which did not affect the title previously acquired by the state.
It seems, however, that the appellant was one of the persons in possession, claiming title to the property under the decree of the circuit court of Henrico county. And it is insisted that this decree, having been rendered by a court of competent jurisdiction, is conclusive of every question decided by it until reversed by some proper proceeding instituted in the court which pronounced it.
Ho one will maintain that the decision of a court, having jurisdiction of the subject matter in a case before it, can be collaterally drawn in question for any errors therein, or in the proceedings which led thereto. But it is equally beyond controversy, that a decree, however regular in its forms, only binds parties and privies: It cannot affect the title of a person not before the court. The exceptions to this rule are very few, and have nothing to do with the matter in controversy. It may be that a purchaser at a judicial sale is not affected by errors in the proceedings which led to the decree. He certainly is affected by a want of proper parties before the court. In this state he takes all the risks of the title. He is bound at his peril to see to it that the persons having title to the property are parties to the suit. Without this, no act of the *301 court can give him a valid title. The curator of Solomon Haunstein’s estate was the only party defendant to the suit in which the decree of sale was rendered. He had nothing to do with the real estate; not the shadow of a title to, or interest in it. If the appellant acquired title by his purchase, whose title did he acquire? Certainly not Solomon Haunstein’s, as all his interest terminated with his death; not that of any heirs, as there were none in existence. The title of the state? It is not pretended. Her rights could not be affected by any orders or decrees in a suit to which she was not a party. If authority were needed to sustain so plain a proposition, it may be found in the case of Hudgin v. Hudgin’s ex’or et als., 6 Gratt. 320. The decision of this court in that case is conclusive upon this branch of the present case.
It is very questionable, to say the least, whether the general statutes, making real estate assets for the payment of debts, and authorizing suits in equity for the sale and administration of the same, apply to escheated lands. The design of those statutes was to give to creditors a remedy against heirs and devisees in the event of a deficiency of personal estate; and all the provisions have reference to lands which have been devised by will, or have descended upon heirs in cases of intestacy.
In cases of escheated lands, the 27th section of chapter 113, Code of 1860, prescribes the mode by which the creditor may enforce his demand against the realty, where there is no personalty. It is very true that this section only provides for those cases in which there has been an actual inquest of office. It has been argued, that the creditor may be delayed for years, if he is compelled to await an inquisition before instituting proceedings to enforce his demand. It will be *302 seen, however, upon an examination of the various provisions in regard to escheats, that hut little difficulty is likely to occur in this respect. Each commissioner of the revenue is required annually to furnish a list of lands in his district of which any person-shall have died seized of an estate of inheritance, intestate and without any known heir. On l’eceiving such list, or upon information from any person in writing and under oath, the escheator is required at once to hold inquest to determine whether the lands have escheated to the commonwealth. Code of 1860, chap. 118, sections 3 and.4. These provisions afford to the creditor the fullest means of enforcing prompt action on the part of the state in the assertion of his claim; while the 27th section gives to him adequate remedies for the recovery of his demand. Any small delay that may occur by this course bears no sort of comparison to the mischiefs which will result from the establishment of a contrary doctrine. To hold that upon the death of a person without known heirs, any one claiming to be a creditor may file a bill in equity, with a personal representative perhaps in the interest of the plaintiff as the only defendant, and obtain a decree for the sale of the real estate, and thus divest the title of the commonwealth, is to open the door to the perpetration of the grossest frauds and injustice. The claim may be wholly fictitious. The sale of the lands may be altogether unnecessary. And even if necessary, they may be sold at the most ruinous sacrifice. Who is to protect the interests of the state against abuses and frauds of this description? It is impossible to foresee the mischiefs that will ensue if this court shall establish a rule of this sort.
This identical question has been the subject of adjudication in other states. In every case I have seen *303 it has been held, that upon the death of the owner of lands, intestate, without heirs capable of inheriting, the title, eo instanti and before office found, vests in the state; and the title could not be divested by a sale made under the decree of any court, unless the state in some form is a party to the proceeding. Hinkle’s lessee v. Shadden, 2 Swan’s R. 46; O’Hanlin v. Den, 1 Spenc. R. 31-43; 1 Zabriskie R. 582.
If these views be correct, the appellant acquired no title by his purchase valid as against the state. As the title of the latter does not depend upon the inquisition, the alleged errors and irregularities in the proceedings of the eseheator are not of the slightest consequence. The rights of the state are not affected by them. The appellant can derive no advantage from them.
The decree of the circuit court of the city of Richmond entered on the 17th day of June 1869, injoining the sale of the lots in controversy, was therefore manifestly erroneous upon its face. It was erroneous not only for the reasons stated, but for the further reason, that it was rendered without an answer for the escheator. The provisions of the 8th section are positive, that the eseheator shall file an answer stating the objection to the claim; and the cause shall be heard without any unnecessary delay, upon the petition, answer, and the evidence. It was the duty of the court to require such an answer before adjudicating the rights of the state. The decree of the ■ circuit court was a decree by default; and the bill of review subsequently filed by the eseheator may be treated as a petition for a rehearing. Such an application is required in all cases of decrees by default before an appeal is taken. But even if it be treated as a bill of review, it was a proper case for such a bill for the reasons already stated.
*304 The decree of the 16th June 1874 is, however, erroneous in one respect, If the appellant was a purchaser in good faith, he had the right to be substituted to all the rights and remedies of the creditor whose debt was paid by the proceeds of sale of the lots in controversy. This was the course pursued by this court in the case of Hudgin v. Hudgin’s ex’or, 6 Gratt. 320, already referred to. This court having decided in that case, that the devisees were not bound by the decree for the sale of their lands in their absence, was of opinion that the purchaser having bought in good faith, and the claim of the creditor being a just one, the former was entitled upon a disaffirmance of the sale, to be substituted to the rights of the creditor, and to charge the land with the amount of the debt paid by him.
This, of course, involves an inquiry into the validity of the claim asserted by William Gleason, as assignee of John W. Thompson. It may bé, as is alleged, that this claim was utterly fraudulent. This record does not furnish any reliable or satisfactory information on that subject. This court cannot undertake to affirm positively that it is a fictitious claim. If such be its character, neither the state nor the lands of which Haunstein died possessed can be made chargeable with it. It will devolve upon the appellant to show that the debt is a just one; and that must be done by evidence other than the judgment in question. This evidence he may be able to furnish. At all events, he should have an opportunity of doing so, if desired by him. The decree is therefore affirmed dissolving the injunction, but the same to be retained in the circuit court for the inquiry, if desired by the appellant.
The decree was as follows:
*305 The court is of opinion, for reasons stated in writing and filed with the record, that there is no error in the decree of the circuit court dissolving the appellant’s injunction. It is therefore adjudged, ordered and decreed that said decree be affirmed, and that the appellant pay to the appellee his costs by him expended in the prosecution of his appeal here.
The court is further of opinion, that the appellant upon showing that he was a bona fide purchaser of the lots in controversy, and the claim asserted by William Gleason, assignee of John W. Thompson, is a valid debt, justly chargeable upon the estate of Solomon Haunstein, deceased, would be justly entitled to be substituted to all the rights and remedies of said Gleason against said estate. The cause is therefore remanded to the said circuit court, with instructions to retain the same a reasonable time in that court, to afford the appellant an opportunity, if desired by him, of establishing the facts upon which his right of substitution depends.
Decree amended and arrirmed.