For reversal, GRAY, HUNT, LEONARD and EARL, C. C. For affirmance, LOTT, Ch. C.

. Judgment reversed, with costs, and judgment of foreclosure for the sum of $4,000 and interest from July 1st, 1859, with costs, ordered for the plaintiff.

---

TUNIS TREMPER, Respondent, *v.* EDWARD E. CONKLIN, surviving partner of the firm of E. E. CONKLIN & Co., Appellant.

A surviving partner is not the assignee in law of his deceased partner, or of the firm effects, and prior to the amendment of 1866 (by which the restriction was extended to surviving partners), section 399 of the Code of Procedure did not apply to actions against such survivors.

In an action against a surviving partner, to recover an alleged indebtedness of the firm, the plaintiff testified that a deceased partner told him "he wanted to borrow some money to use for the firm; he said I could have a firm note for it, or I could have a couple of ice wagons" (individual property of the deceased partner). "He said he wanted $300; I let him have $300."—*Held*, sufficient to sustain the finding of fact, that the loan was to the firm.—*Held*, further, that the plaintiff was a competent witness, under section 399 of the Code as it then read (1864) to testify to this transaction.

(Argued December 28th, 1870; decided December 28th, 1870.)

APPEAL from a judgment entered upon the order of the General Term of the Supreme Court, in the second district, affirming a judgment for the plaintiff rendered upon trial before Justice LOTT, without a jury.

The action was brought to recover of a surviving partner the sum of $300 and interest alleged to have been loaned to the firm, on an application made therefor by a member of the firm since deceased. The facts sufficiently appear in the opinions delivered.

The case below is reported 44 Barb., 456.

*Samuel Hand,* for the appellant, insisted that the evidence did not sustain the finding of a loan to the firm, and cited *Porter* v. *Lobach* (2 Bosw., 188); *Church* v. *Sparrow* (5 Wend., 223); *Pinckney* v. *Keyler* (4 E. D. Smith, 469); 3 Kent Com., 5th ed., 412; Story on Part., §§ 134, 140; Colly. on Part., Perkins' ed., §§ 475, 479, and cases there cited, *White* v. *Gibson* (11 Ind., 283); Ld. Eldon, *Ex parte Emley,* 1 Rose, 61; *Jaques* v. *Marquand* (6 Cow., 497). He also insisted that section 399 of the Code applied to the transaction testified to by the plaintiff.

*D. P. Barnard,* for the respondent.

EARL, C. The plaintiff sued the defendant as the surviving member of the firm of E. E. Conklin & Co., composed of him and James L. Conklin, to recover the sum of $300 loaned to the said firm in September, 1861. The cause was tried at a circuit court in Brooklyn, before the judge, without a jury, and he decided the cause in favor of the plaintiff, and ordered judgment in his favor for the $300 and interest. The defendant appealed from the judgment entered upon this decision to the General Term in the second district, and the judgment was there affirmed, and he then appealed to this court.

The appellant claims that there was not any evidence to show a loan of money to the firm. James L. Conklin died in the fall of 1863, and this suit was commenced in the spring of 1864. The wife of James L. Conklin testified that the plaintiff let her husband have some money in September, 1861, but she was unable to tell how much, or what was said at the time. The plaintiff testified in his own behalf, and was the only witness to show what took place at the time of the loan, and it is upon his evidence alone that it is claimed that the loan was to the firm and not to James L. Conklin individually. He testified as follows: "I saw J. L. Conklin in the fore part of September, 1861; he told me he wanted to

borrow some money to use for the firm; he said I could have the firm note for it or I could have a couple of ice wagons just finished as security; he said he wanted $300; I let him have the $300; it has never been repaid." He further testified that he "took no receipt, due bill or memoranda of the matter either at the time or afterward," and that James L. Conklin was his brother-in-law. The defendant testified that he never heard of this loan until about a week before the commencement of this suit, and that no entry of this money could be found in the firm books, and that so far as he knew this money was not used for the benefit of the firm, and that he attended to the money matters of the firm, and that there was a special agreement between the members of the firm, that no debt should be contracted or loan made without the consent of all the members of the firm. These are substantially all the facts, and upon these the court found that the loan was to the firm. James L. Conklin told plaintiff he wanted the money for the firm, and offered to give him the firm note, or to turn out the wagons as security. The wagons were the individual property of James L. Conklin, but there was no evidence that the plaintiff knew this. The most obvious and natural construction of the language used would indicate that the loan was to the firm. The plaintiff had no reason to suppose from anything that took place at the time of the loan, that it was a loan to James L. Conklin individually for his individual use. It was the province of the judge, before whom the cause was tried, to construe and draw inferences from this evidence, and his decision having been affirmed at General Term, we cannot say that this is a case where there is no evidence to warrant his decision. While the case made by the plaintiff seems to have been a very weak and suspicious one, the finding of the courts below is final and conclusive.

On the trial, the evidence of the plaintiff was objected to because it related to a transaction had with a deceased member of the firm; but the objection was overruled, and it is claimed that this was error.

At the time of the trial of this action in 1864, the Code (§ 399) provided that a party might be a witness in his own behalf, the same as any other witness, except that he could not be examined " in respect to any transaction or communication had personally with a deceased person, against parties who are executors, administrators, heirs-at-law, next of kin, or assignees of such deceased person, when they have acquired title to the cause of action immediately from such deceased person, or have been sued as such executors, administrators, heirs-at-law, next of kin, or assignees." If plaintiff's evidence was incompetent, it was because the defendant must in some sense be treated as the assignee of James L. Conklin ; and the appellant's counsel claims, that by the death of his partner the defendant, as survivor, became, in law, the assignee of the effects of the firm. This claim is not well founded. Copartners while living are neither joint tenants nor tenants in common of the partnership effects ; but their relation more nearly resembles that of joint tenants. They are said to be seized of the partnership effects *per my et per tout*. From this arises the right of each partner to make contracts, incur liabilities, manage the whole business, and dispose of the whole property of the partnership for its purposes, in the same manner and with the same power substantially as all the partners could when acting together. But the principle of joint tenancy as to the partnership effects in possession does not operate beyond their joint lives; and at the death of either of the partners, his share in such effects, subject to the partnership debts, devolves to his personal representatives, who thereupon become, both at law and in equity, tenants in common with the surviving partner. The estate or interest of the surviving partner in such effects is in no way enlarged. His interest remains just what it was before, and his power over the partnership property is in no way altered, except as it is affected by the entire absence of the deceased partner. As he becomes liable to all the partnership debts, the law gives him the control of the partnership effects simply for the purpose of holding and adminis-

tering the estate until the effects are reduced to money and the debts are paid. As to the choses in action of the partnership, the survivor takes the legal title to them simply for the purpose of reducing them to possession. (Collyer on Part., §§ 123, 129; 3 Kent, 37; 1 Parsons on Con., 183; Story on Part., § 346.) In a case of joint tenants, strictly speaking, the survivor never takes the. title, in any sense, as the assignee of the deceased co-tenant. He takes it by virtue of his original title, and as one of the incidents of that title imposed upon it by law when the relation of joint tenants was first created. Hence I am quite clear that the defendant was not, within the letter of the Code, an assignee of a deceased person. When the language used in a law is as clear and certain as it is here, it is not well to grope about after what some call the spirit of the law. In construing a law, words must be understood in their proper and most known signification; and where there is no ambiguity in the language used, in the interpretation of statutes as well as contracts, we must adhere to that. When the language is free from uncertainty and ambiguity, the spirit of the law must be sought for in that, and not in uncertain speculations outside of it.

I have therefore reached the conclusion that the judgment should be affirmed with costs.

LEONARD, C. The appellant raises two questions:

1st. That there is no evidence showing a copartnership obligation.

2d. That the court erred in allowing the plaintiff to be examined as a witness in his own behalf, as to transactions between himself and the deceased member of the defendant's firm.

As to the first objection, the evidence of the plaintiff is, that the application for the loan was on behalf of the firm. J. L. Conklin, the deceased member, wanted to borrow some money to use for the firm. He offered the note of the firm for the loan. The evidence is not very strong. It is capa-

ble of a construction, that the application was to lend to J.
L. Conklin, but it is the natural inference, that the application was on behalf of the firm, as the firm wanted to use the money.   I think the conclusion of the judge, that the money was borrowed for the firm, was warranted by the evidence.

As to the second objection, the action was tried in 1864, when the proviso of section 399 of the Code, prohibited the reception of the evidence of a party against executors, administrators, heirs-at-law, next of kin, or assignees of a deceased person, and allows the admission of the evidence of parties in all other cases.

The case was not within the proviso, as the section existed at the time of the trial.

The judgment should be affirmed with costs.

All concur except LOTT, Ch. C., who did not sit.   Judgment affirmed with costs.*