ETHEL CLARK, APPELLANT, V. JACOB FLEISCHMANN ET AL., APPELLEES.

FILED APRIL 23, 1908.    No. 15,144.

1. **Testamentary Trusts:** TITLE TO REAL ESTATE. Where by the terms of a will the executor and trustee is invested with the management and direction of the real property of the testator, and is required to devote sufficient of the rents and profits to the support of his widow and daughter during their life, and to furnish aid to his father and mother, if their financial condition requires it, retaining any surplus not required for such purposes until sufficient is accumulated to discharge a mortgage on the home of the widow, the legal title to such real estate vests in the executor and trustee until the trust created by the will is discharged.

2. ———: DEVISE: REVERSION. By the terms of a will the income from the real estate of the testator was devoted to certain uses under the direction of the executor and trustee named in the will. After the death of the parties entitled to the income the real estate was devised to an academy, provided the academy had on hand an endowment fund of a certain amount by the year 1900; otherwise the testator's estate was to revert to his heirs and be distributed among them in the proportions provided by the statutes of this state at the time the will was made. The academy having failed to accumulate the endowment fund required by the will at the date fixed therein, *held*, that the title to the real estate then vested in the heirs at law of the testator.

3. ———: POWER OF SALE. While the legal title to real estate of a decedent may, by the terms of his will, vest in the executor and trustee for the purpose of a trust created by the will, the trustee cannot sell such real estate unless an express power of sale is given by the will, or unless the duties imposed upon the trustee by the terms of the will make it necessary that a sale should be made by him in order to carry out the testator's intentions, in which case an implied power of sale will arise.

4. **Partnership:** DEATH OF PARTNER: ADMINISTRATION OF ASSETS. On the death of a partner the partnership assets, both real and personal, pass to the surviving partner, and he is entitled to possession thereof, as against the heirs and executor of the deceased, until the partnership debts, for which he alone is liable, are paid.

5. **Descent and Distribution:** RIGHT OF POSSESSION OF REAL ESTATE. While the executor or administrator of an estate is ordinarily entitled to possession of the real estate of the decedent and to

apply the rents and profits to the discharge of debts owing by
the estate, the heir to whom the title descends may maintain
ejectment against a stranger in possession during the process of
administration, or against a grantee of the executor when the
executor has no power to sell and convey the estate.

APPEAL from the district court for Cass county: PAUL
JESSEN, JUDGE. *Reversed.*

*Byron Clark,* for appellant.

*A. N. Sullivan* and *William Deles Dernier, contra.*

DUFFIE, C.

The plaintiff, Ethel Clark, only heir at law of John
W. Clark, deceased, brought this action to recover from
defendants the possession of the west half of the north-
east quarter of section 16, township 10 north, of range
10, in Cass county, Nebraska, excepting the northeast
fourth of the northwest fourth of the northeast quarter
thereof, and also to recover the rents and profits of said
land for four years prior to the commencement of the
action. After the parties had introduced their testimony,
the court directed a verdict for the defendant and entered
judgment dismissing the plaintiff's action at her costs.
Plaintiff has appealed.

The record shows that John W. Clark, father of the
plaintiff, executed his last will and testament December
24, 1888; that said will was admitted to probate March
15, 1889. Thomas K. Clark, a brother of the deceased,
was nominated in the will as sole executor and trustee to
serve without bonds. In February, 1889, a petition was
presented to the probate court of Cass county, in which
it was alleged that John W. Clark died on the 15th of
February, 1889; that he left a personal estate to be ad-
ministered of the value of about $3,000, and real estate,
the annual rents and profits of which did not exceed
$500; that it was necessary that a special administrator
be appointed to collect and preserve the property, for

the reason that most of the personal property was in notes and mortgages which were held in company with other parties, and which were coming due and needed immediate attention. The probate court, on February 20, 1889, appointed Thomas K. Clark special administrator, and on March 15, 1889, Thomas K. Clark was appointed executor of the estate of the deceased, and he at that time duly qualified. April 5, 1889, the probate court appointed appraisers of the estate, and on the 20th day of April, 1889, the appraisers made a report showing the decedent's interest in the land in controversy in this action to be a one-half interest, and appraising such interest at the sum of $1,300. February 28, 1890, Thomas K. Clark, as executor and trustee of the estate of John W. Clark, conveyed the land in controversy to Jacob Fleischmann, the consideration recited in the deed being $2,535, and Fleischmann has since that date had possession of the land and lived thereon with his family.

It now becomes necessary to examine the will of John W. Clark, under which both parties claim title to the premises. The will, after providing for the payment of the testator's debts and funeral expenses, bequeathed certain personal property to his brother, Thomas K., and his wife, Anna. Articles five, six, seven, nine and fourteen of the will are as follows:

"Fifth. I give, devise, and bequeath to my beloved wife, Anna E. Clark, and my beloved daughter, Ethel Clark, the income derived from the rental of my real estate and the income from the investment of the proceeds thereof, together with the profits and proceeds of sale of my personal property, my said wife and daughter to receive, share and share alike, and in the event of the death of either, the survivor to receive the whole of such income during her natural life or the natural life of either of them, this provision subject to the exceptions herein stated, to wit: First, my wife and daughter are only to receive sufficient for their support and maintenance and education until the surplus of the income herein bequeathed is

sufficient to pay off and satisfy a mortgage now on my wife's house in Weeping Water, which mortgage I desire my executor to pay off and discharge from the income herein referred to and bequeathed. Second, if my beloved father, Timothy Clark, and my beloved mother, Anna Clark, should need any assistance of a pecuniary character during their natural lives, it is my desire that my said parents receive one-half of my said income and my executor hereinafter named is made the sole judge of determining as to the division of said income as herein bequeathed.

"Sixth. I give, devise and bequeath to my beloved brothers, Thos. K. Clark and Timothy B. Clark, share and share alike, the income bequeathed to my wife and daughter, if my said brothers should survive them. My intention being to give to my said brothers the said income bequeathed to my wife and daughter after their death should my said brothers survive them.

"Seventh. After the decease of my wife, Anna E. Clark, and daughter, Ethel Clark, and father, Timothy Clark, and mother, Anna Clark, and brothers, Thomas K. Clark and Timothy B. Clark, I give, devise. and bequeath unto the Weeping Water Academy of Weeping Water, Nebraska, all of my estate, both real and personal, after the uses hereinbefore set forth have been performed, to have and to hold in trust for the purpose and in the manner following, viz.: First. All of said estate to be invested in loans to be secured by a first mortgage deed upon real estate, and the said loans shall in no case exceed forty per cent. of the fair, cash, market value of said security for each separate loan. Second. The said academy to have the sole and separate use of one-half of the income of said estate less all actual and incidental expenses necessary in taking care of said estate, said use to be in full, final and complete release for all services rendered said estate by said academy and its proper officers. Third. Believing that a good and thorough education is most beneficial and conducive to good morals

and religion, and being desirous that all of my descend-
ants shall have the opportunity of a good and thorough
education, I hereby create and establish a permanent fund
out of my estate so held in trust by the Weeping Water
Academy which shall always be known by the name of the
'Clark Heir Educational Fund,' and one-half of the gross
income derived from said estate shall be expended upon
application in the payment of all expenses in the main-
tenance and education of my descendants in any college,
university, public or private school they may elect to
attend, said application to be allowed and paid in the
following order: First, to my lineal descendants, and,
second, to my collateral descendants in equal degrees of
affinity, and if at any time said income shall not be suf-
ficient to pay all applications made for education, I direct
that those of my heirs who are least able to pay the ex-
penses of their own education by themselves and parents
shall be paid first."

"Ninth. I further direct my executor and trustee here-
inafter named to distribute under and by virtue of the
law of this state to the persons herein designated all of
my said estate, provided that the Weeping Water
Academy of Weeping Water, Nebraska, shall not at or
before the year nineteen hundred have builded and in
actual use by said academy a college building costing not
less than ten thousand dollars ($10,000) exclusive of
furnishings and an endowment fund of not less than
twenty thousand dollars ($20,000) dedicated to educa-
tional purposes derived from private individuals and ex-
clusive of any actual or expectant interest in my estate
under the provisions of this will, and the absence of either
the building or the endowment fund as above required at
the time named shall cause my entire estate to revert to
my legal heirs under the present laws of descent of the
state of Nebraska."

"Fourteenth. I hereby nominate and appoint my be-
loved brother, Thos. K. Clark, my sole executor and trus-

32

tee of my estate under this my last will and testament to serve without bonds which are now required by the law from executors and administrators or of any form."

In construing a will, it is the purpose of the court to ascertain the real intention of the testator. It is quite evident from the fifth article of the will that the testator intended to give to his wife and daughter such part of the income arising from his real estate as would be sufficient for their support and the education of the daughter, the surplus to be held by the executor and trustee until sufficient had accumulated to pay a mortgage existing on the home of his wife in Weeping Water, the discretion of the trustee to be exercised in extending aid from such income to the father and mother of the testator, if their circumstances required it. As the wife and daughter were to receive only sufficient of the income for their support and education, it is evident that some one must be invested with power to determine the amount of the income which should be used for that purpose, and of necessity this person, in the absence of further direction in the will, was the executor and trustee of the estate having the same in charge and whom the testator evidently contemplated, by the language used, should attend to renting the real estate and to disbursing the rents received therefrom. Under the seventh article of the will, all of the real estate of which the testator died seized, and all the personal property belonging to the estate on the death of the wife and daughter, and of the parents and brothers of the testator, was to pass to the Weeping Water Academy, in case that institution had erected a building costing not less than $10,000, and had acquired an endowment fund of not less than $20,000, on or prior to the year 1900, and of necessity the title to the real estate must rest in some one after the death of the testator, and prior to its being vested in the Weeping Water Academy, in case that institution had complied with the conditions of the will. That many years would reasonably be expected to elapse before the death of all

the relatives of the testator mentioned in the will must have been contemplated by him, and during that time some one must be invested with title to the real estate, as it is a rule of the common law that title to land cannot be in abeyance or without an owner, even for a single moment. *Sands v. Lynham,* 27 Grat. (Va.) 291, 21 Am. Rep. 348.

Who then was to hold the title during this period? It is a general rule that a trust will be implied in the executor of a will when the duties imposed are active and render the possession of the legal estate in the executor convenient and reasonably necessary, although it may not be absolutely essential to accomplish the purposes of the will, and when such implication would not defeat, but would sustain, the disposition of the will. *Roberts v. Corning,* 89 N. Y. 225. In *Bradley v. Amidon,* 10 Paige Ch. (N. Y.) 235, Chancellor Walworth said: "By the express terms of this will, the executors are to take upon themselves the management and direction of the property until the children of the testator's daughter shall respectively attain the age of twenty-one, and from the rents and profits to provide for her support, as well as for the maintenance and education of her children who have not attained that age. This is a valid trust under the provisions of the revised statutes, and the legal title must vest in the trustees by implication, during the minorities of the legatees and devisees respectively, to enable such trustees to collect and receive the rents and profits and income of the property, and to apply them to the purposes of the trust in the meantime, and to accumulate the surplus, if any, for the benefit of those who are entitled thereto, during their respective minorities, as directed by the will." In *Bowen v. Payton,* 14 R. I. 259, the court held that a devise of the rents and profits of the testator's land to his sister for life, to be paid by his executor, is not a devise of the land to her, but to his executor in trust to receive the rents and profits for her use during life. To us it seems plain that it was the in-

tention of the testator that the title should be held by his executor and trustee not only from the circumstances here mentioned, but, from another provision of the will which will be noticed hereafter, this seems to be the only conclusion to be derived from all the circumstances and the wording of the will.

It is conceded that the Weeping Water Academy did not in 1900 possess the endowment fund required by the terms of the will to entitle it to the testator's estate. That being the case, according to the ninth article of the will the executor and trustee was to distribute the estate to the parties entitled thereto under the statutes of Nebraska. Was the executor and trustee empowered to sell the land? The will does not confer upon the executor and trustee any express power to sell the real estate, and no power to sell will be implied unless the duties imposed by the will make it necessary that a sale should be made by the executor in order to carry out the testator's intention. *Gammon v. Gammon Theological Seminary,* 153 Ill. 41; *Wilson v. Mason,* 158 Ill. 304; *Hale v. Hale,* 125 Ill. 399. It is conceded that the Weeping Water Academy did not have an endowment fund sufficient to entitle it to take under the will. This being the case, the whole estate, under the ninth article of the will, reverts to the testator's legal heirs and is to be distributed among them as provided by the statutes of Nebraska. The executor is directed to distribute the estate, and the defendants insist that by the use of this language the testator intended that the executor and trustee should sell the real estate and distribute the proceeds among his heirs. As before stated, a power of sale, when not expressly given, will not be lightly implied. While the word "distribute" is usually applied to money and personal property, it has also been held to designate a division of real estate among heirs or devisees. A will giving the executor and trustee express power of sale contained also the following provision: "Second. When my said daughters, Ida M. and Florence, or the survivor of them,

shall have attained to the age of twenty-one years, or in case of the death of both of them under twenty-one years of age, then upon the decease of the longest liver of them, whichever event shall first happen, I direct the said trustee to distribute the trust estate in the following manner." "The will, exclusive of the power of sale, did not authorize the trustee to sell the land, but the power did authorize such sale in the trustee's discretion. If the power of sale were not exercised, who would take the real property? The persons described as distributees would take it, and it is considered that they would take it as remaindermen, by a title that vested in them at the death of the testator. There was a life estate carved out of the property. The trustee took an estate commensurate with the life estate, inasmuch as the declared purpose of the trust required that no greater estate be vested in him." *In re L'Homme-dieu*, 138 Fed. 606. In the case we are considering, had the Weeping Water Academy met with the conditions of the will to entitle it to the estate, the executor and trustee would have held a life estate during the life of the testator's relatives mentioned in his will; but, when it was found in 1900 that the devise to the academy failed, the whole estate reverted and passed to the testator's legal heirs.

The testator, John W. Clark, and Thomas M. Howard were partners in the law, loan and real estate business at Weeping Water, Nebraska, and had been for some years prior to the death of Clark. The defendants insist that the land in controversy was owned by the partnership, and in support of this contention it is shown that Henry A. Bragg occupied the land in 1887 under a school land contract, and that Bragg assigned this contract to John W. Clark on the 21st day of July, 1887. As before stated, the inventory of the decedent's estate shows that decedent held a one-half interest in this land which was appraised at $1,300, and Bragg testified upon the trial that he sold his interest to Clark & Howard, or supposed

that the firm of Clark & Howard were purchasing his interest in the land. The state issued a deed for the land to John W. Clark in February, 1889, upon payment of the remainder due on the contract, and this deed to Clark and the assignment to him of the school land contract vested him with legal title to the whole tract, in the absence of a showing that the purchase was made with partnership funds, and we do not think that the inventory and appraisement, or the evidence of Bragg, who merely testified to his understanding of the parties to whom the sale was made, can overthrow Clark's title to the whole estate, shown by the Bragg assignment and the deed of the state. There is another fact going to controvert this claim. Before the liquidation of the partnership, its effects are considered personalty, although vested in land, and when a partner dies his personal representative, not his heirs, succeed to his unliquidated interest therein; but the title to property belonging to the copartnership vests in the surviving partner, who alone is chargeable at law with the partnership debts and entitled to realize upon the partnership assets, and who is, unless the articles of agreement provide otherwise, vested with the exclusive right to and management of the firm assets for the purpose of closing the business and distributing such surplus as remains. 18 Cyc. 189.

In *Sternberg v. Larkin*, 58 Kan. 201, 37 L. R. A. 195, the syllabus is in the following language: "Real estate held and used for partnership purposes is to be treated, upon the dissolution of the partnership by the death of one of its members, and for the purpose of closing up its business, the same as personal property; and a settlement of the firm business, made by the surviving partner and the administratrix of the deceased partner, with a view to discharging the partnership debts and winding up the partnership business, by the terms of which it was agreed that the partnership real estate should be retained by the survivor and the title thereto should be vested in him, will be upheld when approved by the probate court in a

proceeding to which the administratrix and the heirs of the deceased partner were parties. And, in such case, title to such real estate passes to the surviving partner under such settlement and its approval by the probate court, without any formal conveyance of the deceased partner's interest." In *Galbraith v. Tracy*, 153 Ill. 54, 28 L. R. A. 129, it was held by the supreme court of Illinois that in equity the real estate of the partnership is regarded as standing on the same footing with personal property, no matter in whom the legal title may be vested. The same principle was recognized by this court in *Sullivan v. Smith*, 15 Neb. 476, where the absconding of one partner was held a virtual dissolution of the firm, vesting the other partner with power to make an assignment of the partnership effects for the benefit of creditors. We think, also, that section 5192 Ann. St. 1907, recognizes the right of a surviving partner to the property of the firm in authorizing the sale of the interest of the deceased partner in the partnership effects. The property in which the deceased partner had an interest is not to be sold, but only the interest which the deceased held therein. See, also, notes to *Woodward-Holmes Co. v. Nudd*, 27 L. R. A. 340 (58 Minn. 236) ; *Betts v. June*, 51 N. Y. 274; *Tremper v. Conklin*, 44 N. Y. 58. If this was partnership land, it would hardly be inventoried as belonging to the estate, but testator's interest in the copartnership would have been set out in the inventory.

We have given this branch of the case this much attention for the reason that in February, 1889, Thomas K. Clark, who had been appointed special administrator of the estate, before qualifying as executor, applied to the county court for leave to sell the personal estate of the decedent, but the record does not show whether the petition was granted and the sale made or what disposition was made of it; neither is there anything in the record to show the financial condition of the firm of Clark & Howard at the date of the testator's death, and whether it was necessary for the surviving partner to take

possession of the real estate of the copartnership and dispose of it for the payment of its debts. It may be that evidence can be produced on another trial showing that the decedent's interest in the copartnership was sold and that the land in controversy was a part of the assets of the firm. If such was the case, and the sale received the approval of the probate court, that, of course, would divest the plaintiff of any interest in the land. The estate has not yet been settled. The executor has not made his final report or received his discharge. If the land in controversy has been sold as a part of the assets of the copartnership, the executor on final settlement must account for the proceeds. If the land was not the property of the copartnership, and the record is barren of sufficient evidence to show that fact, then the title under the will of the testator vested in the plaintiff in 1900, and she is entitled to possession.

The defendants further insist that under our statute the executor is entitled to the possession of the real estate of the decedent until the estate is finally settled, and that, claiming through the executor, their possession cannot be questioned. The record shows that all claims against the estate have been paid, and, as the statute gives the executor the right of possession of the real estate of a decedent that he may receive the rents and profits and apply them to the discharge of debts due from the estate, it is doubtful if such right of possession continues after all debts have been discharged. Aside from this view of the case, the defendants do not claim to hold possession for the executor, but in their own right as owners of the fee, and, under the authority of *Lewon v. Heath,* 53 Neb. 707, the heir may maintain ejectment against such a claimant during the pendency of the administration proceedings.

We recommend a reversal of the judgment and remanding the cause to the district court for further proceedings.

EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.