BESSIE C. MUSIL, APPELLEE, V. OTTO E. BERANEK (REVIVED IN THE NAME OF HELEN BERANEK AS ADMINISTRATRIX WITH WILL ANNEXED OF OTTO E. BERANEK, DECEASED) ET AL., APPELLANTS.

69 N. W. 2d 885

Filed April 22, 1955. No. 33699.

*Torgeson, Halcomb & O'Brien* and *Blackledge & Sidner*, for appellants.

*C. J. Mingus* and *DeWayne Wolf*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is a suit in equity instituted by the plaintiff, Bessie C. Musil, against Otto E. Beranek and other defendants, to establish a constructive trust on 80 acres of land in Buffalo County and to secure a partition thereof. The trial court found that the land should be impressed with a constructive trust, that plaintiff was the owner of a one-third interest therein, and that the land should be partitioned. Pending a hearing on a motion for a new trial the defendant Otto E. Beranek died testate. The action was duly revived in the name of his wife, Helen Beranek, administratrix with will annexed of the estate of Otto E. Beranek, deceased, and Helen Beranek personally. An appeal was taken to this court from the findings and decree entered, and from the overruling of the motion for a new trial filed by Helen Beranek personally and as such administratrix.

The plaintiff is a sister of Otto E. Beranek and Adolf Beranek, the three being the children of Frank and Anna Beranek. The 80 acres of land involved in this suit were owned and occupied by Frank Beranek and his wife for many years prior to the time they deeded the land to Otto E. Beranek. In the fall of 1940 Frank Beranek became ill. Local physicians advised that little could be done for him. Otto and Bessie took their father, Frank, to Salina, Kansas, in search of medical relief. They traveled by automobile, and on the way it was suggested that Frank turn the deed to the 80 acres over to Otto or Bessie. The purpose was to see that Frank obtained medical care and that certain debts of Frank be paid, and thereby relieve Frank from financial worry during his illness. Bessie states that Otto said to Frank: "Now, you can take the rent shares off of that 80 the same as you always did,"—"the farm will be yours the same as it always was, only it would be in either Bessie's or my name." No definite arrangement appears to have been made at this time. After Frank returned from Salina, he sought medical aid in Denver, Colorado. Otto E.

Beranek took Frank to Denver and paid medical and living expenses for Frank while he was being treated. Frank returned from Denver about Christmas time in 1940. A house was rented in Ravenna and Frank and Anna occupied it about January 1, 1941. In February Frank became ill with influenza. On February 13, 1941, he deeded the land to Otto. Frank returned to Denver for further medical treatment. He returned home a few days before he died on April 30, 1941.

It appears from the record that Frank Beranek owed his brother $700 on a note, $200 on an insurance loan, and a few other obligations including the expenses of his last sickness. Otto put a $1,000 mortgage on the 80 acres to pay these items. Frank's insurance was ample to pay the funeral expenses and to place $300 in the bank for the care of Anna.

The evidence shows that the 80 acres were being farmed by Bessie's husband, Charles. Bessie testifies to an oral agreement with Otto whereby she was to sell certain personal property belonging to Frank at his death and place the money in the bank in her own name for the care of the mother. Bessie also collected the rents from the 80 acres and placed them in the same account. In 1946 Bessie had accumulated more than $1,000 in this fund. On February 4, 1946, Bessie sent $1,000 to Otto to be used in paying the $1,000 mortgage. Otto failed to do so.

By agreement between Otto and Bessie, Bessie collected the rent after Frank's death and put it in the bank for the care of Anna. After Anna's death in 1950 Bessie continued to collect the rent. Instead of placing it in the bank, however, she remitted one-third to Otto, one-third to Adolf, and retained one-third for herself. There is no doubt that Otto acquiesced in this distribution of the rent from the 80 acres. It was so distributed in 1950, 1951, and 1952. On February 22, 1951, Otto mortgaged the land for $2,500 and retained the proceeds

for his own use. On July 31, 1951, Otto served a notice on Bessie's husband to vacate the land.

Bessie testifies that following the funeral of her mother in 1950, Otto stated they would have to get together at a later time to settle the estate. During this conversation, according to Bessie, he also said: "When my dad turned that deed over to me, that was to take care of mother and to be sure that she was taken care of, and if there was anything left when she was gone it was to be divided between the three grandsons." It appears that Otto, Bessie, and Adolf each had one son. This is the only reference to any intent of Frank to convey the land to his grandsons. The statement is evidence, however, that Otto held the land as a trustee and not as sole owner. It was not until January 1952 that Otto informed Bessie that his expenses were such that there was nothing left in the 80 acres for Bessie.

Otto Beranek states that he leased the land to Bessie and Charles Musil in 1941 with the understanding that Bessie should retain all the rent and use it for the care of Anna. He testifies, also, that he received the deed from Frank and Anna with the understanding that he was to pay certain enumerated bills and see that Anna was cared for. No attempt is made by Otto to explain his acquiescence in the equal division of rents between Otto, Bessie, and Adolf after 1950. He does not deny the conversations testified to by Bessie. It is clear that Otto considered Bessie and Adolf part owners of the 80 acres until some time in January 1952. Previous to that time he consulted with Bessie about the 80 acres and matters with reference to it. The evidence shows that the debts of the estate and the expense of the care of the mother were paid from funds derived from the $1,000 mortgage, the $1,000 insurance policy, and the rents from the 80 acres. The appellee contends that the evidence sustains a finding that a constructive trust was created. It is clear that an express trust relating to real estate may not be created by parol agreement.

Such an agreement contravenes the provisions of the statute of frauds. Pollard v. McKenney, 69 Neb. 742, 96 N. W. 679. However, trusts arising by implication, or by operation of law, are excepted from the operation of the statute. Resulting and constructive trusts obviously fall within the exception. Pollard v. McKenney, *supra*.

A constructive trust arises from actual or constructive fraud or imposition, committed by one party on another. It arises if one person obtains the legal title to property from another by fraud or misrepresentation, or by an abuse of some influential or confidential relation which he holds toward the owner of the legal title, or obtains such title from him upon more advantageous terms than he otherwise could have obtained it. When one of the foregoing situations is shown to exist by clear, satisfactory, and convincing evidence, the law constructs a trust in favor of the party upon whom the fraud or imposition has been practiced. Peterson v. Massey, 155 Neb. 829, 53 N. W. 2d 912. And, also, if a party obtains the legal title to property by virtue of a confidential relation, under such circumstances that he ought not, according to the rules of equity and good conscience hold and enjoy the benefits, a court of equity will raise a trust by construction and convert the holder into a trustee of the legal title. Paul v. McGahan, 152 Neb. 578, 42 N. W. 2d 172. If the intention of the promisor not to perform can be shown to have existed at the time the promise was made, the promise is fraudulent, even in the absence of a confidential relationship between the parties. It is also the rule that the violation by the grantee of a promise to reconvey is constructively fraudulent and gives rise to a constructive trust which may be established by parol if he obtains a deed without consideration by means of a parol agreement to reconvey to the grantor to whom he stands in a confidential relation, even when there be no intention at the time not to perform the promise. Pollard v. McKenney, *supra*.

The case being one in equity, it is triable de novo in this court. Wiskocil v. Kliment, 155 Neb. 103, 50 N. W. 2d 786. The burden of proof is on the plaintiff to establish the existence of a constructive trust by evidence which is clear, satisfactory, and convincing in character. Maddox v. Maddox, 151 Neb. 626, 38 N. W. 2d 547.

We think the evidence shows the facts to be as follows, when measured by the foregoing rule: Frank and Otto Beranek were father and son. Frank Beranek, at the time of the conveyance and the events leading up thereto, was in ill health and worried about his finances and the future care of his wife, Anna. He conveyed the 80 acres of land to Otto with the understanding that Otto would see that his debts were paid and that Frank's wife, Anna, would be properly cared for with the proceeds from the 80 acres, and that anything remaining after the death of Anna would be equally divided between Otto, Bessie, and Adolf. This is sufficient to sustain a constructive trust.

The record shows that Otto mortgaged the 80 acres for $2,500 and used the proceeds for his personal needs. The interest of Otto in the 80 acres is therefore primarily charged with the $2,500 in the same manner as decreed by the district court. The record establishes that Otto is the owner of the one-third interest of Adolf. The appellee is the owner of a one-third interest in the 80 acres by virtue of the constructive trust, subject to the contingent liability of the $2,500 mortgage. The order of the district court determining the rights of the parties in the 80 acres and directing the partition of the land is in all respects correct.

AFFIRMED.