CLYDE E. SCHANEMAN AND BARBARA K. SCHANEMAN, APPELLEES AND CROSS-APPELLANTS, v. FLAVEL A. WRIGHT ET AL., APPELLANTS AND CROSS-APPELLEES.

470 N.W.2d 566

Filed June 7, 1991.   No. 89-192.

310

Kathleen A. Jaudzemis, of Cline, Williams, Wright, Johnson & Oldfather, for appellants.

Robert G. Simmons, Jr., of Simmons, Raymond, Olsen, Ediger, Selzer & Ballew, P.C., for appellees.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

## I. INTRODUCTION

Defendants-appellants and cross-appellees, Flavel A. Wright and his spouse, Dorothy Wright Hughes and her spouse, Betty Wright Evers and her spouse, Fred Wright and his spouse, and Barbara Overholt and her spouse, assert the district court erred in quieting title to certain mineral rights in plaintiffs-appellees and cross-appellants, Clyde E. Schaneman and his spouse, Barbara K. Schaneman, by virtue of improvidently finding that (1) there existed no trust of those rights for the benefit of the defendants and (2) transference of the surface estate conveyed the mineral rights as well. By their cross-appeal, the plaintiffs challenge certain evidential rulings. We reverse.

## II. FACTS

On November 20, 1968, Elizabeth R. Wright, a widow, executed a deed conveying the mineral interests in her Scotts Bluff County land to one of her sons, Floyd E. Wright, subject to an existing lease of the oil and gas rights to Walter Ohmart, Jr. The mineral deed otherwise absolutely conveyed the mineral estate to Floyd E. Wright. This mineral deed was filed with the appropriate register of deeds on November 29, 1968. On January 13, 1969, "Floyd E. Wright Trustee" ratified the aforementioned Ohmart lease. On November 6, 1969, Floyd E. Wright and his wife, Elsie, as lessors executed a second oil and gas lease with Ohmart as lessee. This document made no

reference to a trust or trustee.

Elizabeth R. Wright died October 20, 1972, and Floyd E. Wright became executor of her estate. The subject land was then listed for sale. Plaintiffs sought to elicit testimony from real estate agent Victor Asmus that the listing included the mineral rights. Defendants objected on the ground that the testimony was barred by the parol evidence rule and was therefore irrelevant. The objection was sustained, and plaintiffs made an offer of proof, showing that if permitted, Asmus would testify that upon inquiry Floyd E. Wright said that all the mineral rights were going to be conveyed and, further, that he, Asmus, on behalf of Floyd E. Wright, represented to the Schanemans that if they purchased the land, they would receive all the mineral rights.

On March 10, 1973, plaintiff Clyde Schaneman, John L. Schaneman, and Clara B. Schaneman executed an offer to purchase the land at issue, "[t]ogether with all tenements, hereditaments, and appurtenances thereto pertaining. Subject to all easements, rights-of-way, and reservations of record. Further subject to Tenant's Lease in possession for crop year of 1973." The receipt for the earnest money the Schanemans tendered and the acceptance of offer were signed by "John F. Wright . . . for Floyd E. Wright Executor of the Estate of Elizabeth R. Wright."

During the title search, plaintiffs' attorney discovered the mineral deed, various oil and gas leases, and the ratification by Floyd E. Wright "Trustee," and through his title opinion brought these items to John Schaneman's attention.

Apparently in response to concerns raised by the title search, Floyd E. Wright, on July 20, 1973, executed an affidavit, which reads:

FLOYD E. WRIGHT, being first duly sworn on his oath, deposes and states:

1. That he is a son of Elizabeth R. Wright, who died October 20, 1972, and a resident of Scotts Bluff County, Nebraska and that he looked after and managed the following:

[Legal description of the subject land]

for his mother during all of the times that she owned the

said land.

2. That on or about November 20, 1968, his mother, Elizabeth R. Wright, a widow, executed to him, a mineral Deed conveying to him all of the minerals in, on or under the said land, under an agreement whereby the affiant, Floyd E. Wright was to hold the said minerals in trust for himself, his brother and his sisters, one-fifth each and in trust for Fred Wright and Barbara Overholt, children of a deceased brother, William H. Wright, one-fifth each.

3. Affiant further states that during the time that Elizabeth R. Wright owned the said land, several oil and gas leases were granted to various lessees but that no drilling for oil and gas was ever done upon the said land and that there has never been any production of oil, gas or other minerals from the said land.

On August 8, 1973, Floyd E. Wright, both individually and as executor of the estate of his mother, together with his wife, executed a warranty deed in favor of plaintiffs, providing:

FLOYD E. WRIGHT, Executor of the Estate of Elizabeth R. Wright, Deceased; and, FLOYD E. WRIGHT and ELSIE WRIGHT, Husband and Wife, herein called the grantor whether one or more, in consideration of ONE HUNDRED AND FIFTEEN THOUSAND AND NO/100 ————————— ($115,000.00) ——— ——————— DOLLARS received from grantee, does grant, bargain, sell, convey and confirm unto CLARA B. SCHANEMAN, an undivided one-half (1/2); and, CLYDE E. SCHANEMAN and BARBARA K. SCHANEMAN, Husband and Wife, an undivided one-half (1/2), herein called the grantee whether one or more, the following described real property in Scotts Bluff County, Nebraska:

[Description of land at issue]

SUBJECT TO the surface lease to Larry Kilthau.

To have and to hold the above described premises together with all tenements, hereditaments and appurtenances thereto belonging unto the grantee and to grantee's heirs and assigns forever.

And the grantor does hereby covenant with the grantee

and with grantee's heirs and assigns that grantor is lawfully seised of said premises; that they are free from encumbrance[;] that grantor has good right and lawful authority to convey the same; and that grantor warrants and will defend the title to said premises against the lawful claims of all persons whomsoever.

The affidavit of Floyd E. Wright was filed at 10:20 a.m., August 13, 1973; the warranty deed to the plaintiffs and Clara B. Schaneman was filed 1 minute later. The plaintiffs executed oil and gas leases for the property on June 15, 1975, December 18, 1978, November 6, 1980, and June 20, 1986.

### III. PRELIMINARY MATTERS

Before embarking on our analysis of defendants' appeal and plaintiffs' cross-appeal, we note that we are directed to no part of the record which deals with the grantee Clara B. Schaneman's interest in the subject land. Neither do we find any evidence concerning her interest. As a consequence, the district court's finding that the "[p]laintiffs are the record title owners to all ownership interests" in the land is erroneous. It is, however, an error which merges with the district court's erroneous adjudication, and we thus do not separately concern ourselves with the absence of any reference to that necessary party. For this reason, neither do we concern ourselves with the effect the deed executed by Floyd E. Wright and his spouse had on his own beneficial interest in the mineral estate.

Except for the fact that Floyd E. Wright's affidavit identifies Fred Wright and Barbara Overholt as children of affiant's deceased brother, neither does the record tell us Floyd E. Wright's relationship to the other defendants. However, this mystery, too, becomes unimportant, as the plaintiffs must recover on the strength of their own title, part IV, *infra*, and the record does identify the relationship of the two last-named defendants to Floyd E. Wright, thereby presenting the issue raised by defendants' appeal.

Lastly, we dispose of plaintiffs' assertion that defendants' failure to sign their answer deprives that pleading of all effect. "The signature of a party or of an attorney on a pleading constitutes a certificate by him or her that he or she has read the

pleading; that to the best of his or her knowledge, information, and belief there is good ground for the filing of the pleading; and that it is not interposed for delay." Neb. Rev. Stat. § 25-824 (Reissue 1989). Thus, the attorney's signature serves essentially the same function as the old verification requirement, and we have held that failure to verify an answer is waived if not raised before trial. *Northup v. Bathrick*, 80 Neb. 36, 113 N.W. 808 (1907). The same rule applies to the failure to sign an answer. The record failing to show that plaintiffs raised this defect before trial, when it could easily have been cured, the defect was waived.

### IV. ANALYSIS OF APPEAL

Although the plaintiff in an action to quiet title has the burden of proof and must recover on the strength of his or her own title and not the weakness of defendant's title, *Mack v. Luebben*, 215 Neb. 832, 341 N.W.2d 335 (1983), the burden of proof is upon one seeking to establish and enforce a trust to prove the same by clear and convincing evidence, see *Halsted v. Halsted*, 169 Neb. 325, 99 N.W.2d 384 (1959).

#### 1. EXISTENCE OF A TRUST

Directing our attention to a portion of Restatement (Second) of Trusts § 24 (1959), the defendants first contend that "a valid trust was created by" Elizabeth R. Wright's "oral declaration." Brief for appellants at 8. The pertinent language reads: "(1) Except as otherwise provided by statute, the manifestation of intention to create a trust may be made by written or spoken words or by conduct. (2) No particular form of words or conduct is necessary for the manifestation of intention to create a trust." The Restatement, *supra* at 67. However, while this may be an accurate statement of how the settlor may manifest her intent, we have held that an express trust in real estate may not be created by parol agreement, for such agreement contravenes the statute of frauds. *Musil v. Beranek*, 160 Neb. 269, 69 N.W.2d 885 (1955).

#### (a) Statute of Frauds

The deed executed by Elizabeth R. Wright, granting the mineral estate to Floyd E. Wright, is absolute in its terms. There

is nothing in it which even suggests a trust. Under the statute of frauds, an express trust in land (as opposed to a constructive or resulting trust) can be created or declared only "by deed of conveyance in writing, subscribed by the party creating . . . or declaring the same." Neb. Rev. Stat. § 36-103 (Reissue 1988); *Halsted v. Halsted, supra*; *Musil v. Beranek, supra*.

Defendants assert that the writing requirement is met by Floyd E. Wright's affidavit. In support of this position, they cite us to Restatement (Second) of Trusts § 42 (1959), 1 A. Scott, The Law of Trusts § 42.3 (3d ed. 1967), and G. Bogert, The Law of Trusts and Trustees § 82 (rev. 2d ed. 1984), each and all to the effect that the statute may be satisfied by a writing signed by the trustee after the trust is created. These authorities state the general rule that a writing memorializing the oral trust and signed by the trustee while the trustee still holds title to the property may satisfy the statute of frauds.

This rule is followed even in jurisdictions whose statutes provide, as does ours, that the trust must be "created" or "declared" by a writing. See G. Bogert, *supra*, § 63. While *Musil* stated that an express trust in real estate could not be created by an oral agreement and other Nebraska cases have stated that such trusts are unenforceable, see, e.g., *Blohme v. Blohme*, 166 Neb. 369, 89 N.W.2d 127 (1958), *reh'g denied* 167 Neb. 1, 91 N.W.2d 30, this appears to be the first time this court has been asked to determine the validity of such trusts based upon a subsequent writing. In accordance with the great weight of authority, we hold that a subsequent writing, sufficiently memorializing an oral trust, signed by the trustee while the trustee holds title to the property, satisfies the statute of frauds.

"A memorandum properly signed is sufficient to satisfy the requirements of the Statute of Frauds if, but only if, it sets forth with reasonable definiteness the trust property, the beneficiaries and the purposes of the trust." Restatement (Second) of Trusts § 46 at 123 (1959). See, also, G. Bogert, *supra*, § 87. Floyd E. Wright's affidavit identifies the trust property and beneficiaries, but the only indication of the purposes of the trust is the words "to hold . . . in trust for." This, however, is a sufficient memorial of the trust purpose. See the Restatement, *supra*, § 46, comment *a*. at 123:

> If the owner of property declares himself trustee of the property or transfers it "in trust" for a named person without specifying further the purposes of the trust, the writing sufficiently designates the purpose of the trust since it is a declaration of a passive trust of the property for the intended beneficiary.

While the content of Floyd E. Wright's affidavit is sufficient to satisfy the statute of frauds, we must still determine whether it was executed while Floyd E. Wright had title to the mineral estate. The affidavit predates the warranty deed, for although it was filed on August 13, 1973, it was subscribed on July 20 of that year, while the deed is dated August 8, 1973.

Even though the earnest money and offer to purchase were accepted on March 10, 1973, the doctrine of equitable conversion did not vest plaintiffs with equitable title to the mineral estate on that date. This is because the acceptance was made by John F. Wright "for Floyd E. Wright Executor of the Estate of Elizabeth R. Wright." Since John F. Wright acted only as the agent of the executor of Elizabeth R. Wright's estate, the contract could only work an equitable conversion of the estate's interest. The mineral rights were not held by the estate but by Floyd E. Wright under the deed from his mother. Therefore, there could be no equitable conversion of the mineral estate unless and until Floyd E. Wright or his agent executed a contract of sale in his individual capacity or as trustee.

Since Floyd E. Wright's affidavit acknowledging the trust was executed while he still held the mineral estate, the writing, if admissible for that purpose, satisfies the statute of frauds.

### (b) Admissibility of the Affidavit

Plaintiffs put forward two arguments against the use of the affidavit to satisfy the statute of frauds: (1) an affidavit is inadmissible to establish facts material to the issue being tried, and (2) use of the affidavit is barred by the parol evidence rule. Defendants counter by asserting that plaintiffs cannot complain of this use of the affidavit, since plaintiffs offered it into evidence in the first place.

We have held that as a general rule a litigant cannot introduce evidence and later complain that it was error to consider such

evidence. *Mandery v. Chronicle Broadcasting Co.*, 228 Neb. 391, 423 N.W.2d 115 (1988). Plaintiffs, however, do not contend that it was error to admit the affidavit or that the district court used it improperly. Indeed, the affidavit clouds their title by failing to reveal whether the trustee had the power to sell the mineral estate; there is nothing inconsistent in plaintiffs' considering it relevant as a cloud on their title while simultaneously asserting that its use to change the meaning of the mineral deed is prohibited by the parol evidence rule.

While one who has invited error cannot be heard to complain of it, see, e.g., *State v. Zima*, 237 Neb. 952, 468 N.W.2d 377 (1991), *First West Side Bank v. Hiddleston*, 225 Neb. 563, 407 N.W.2d 170 (1987), *Fuel Exploration, Inc. v. Novotny*, 221 Neb. 17, 374 N.W.2d 838 (1985), and *Bohaty v. Briard*, 219 Neb. 42, 361 N.W.2d 502 (1985), that is not the case before us. Plaintiffs are not complaining of any error in the admission of the evidence; they are simply responding to an argument put forward by defendants on appeal.

Defendants' contention being without merit, we turn to the first of plaintiffs' arguments. They rely on statements by this court that the general rule in Nebraska is that an affidavit cannot be used to establish facts material to the issue being tried. *Doyle v. Union Ins. Co.*, 209 Neb. 385, 308 N.W.2d 322 (1981); *Banks v. Metropolitan Life Ins. Co.*, 142 Neb. 823, 8 N.W.2d 185 (1943). While this may be the general rule, the Legislature has provided an exception. Under Neb. Rev. Stat. § 76-271 (Reissue 1990), an affidavit explaining or correcting an apparent defect in the chain of title may be recorded as an instrument affecting real estate, "and such record shall be prima facie evidence of the facts therein recited."

Floyd E. Wright's affidavit was recorded as an instrument affecting real estate; it explains the use of the word "trustee" in the January 13, 1969, oil and gas lease ratification and also states that no minerals were ever produced from the property, thus addressing concerns raised by plaintiffs' attorney in his abstract opinion. As an affidavit recorded under § 76-271, it is prima facie evidence that Floyd E. Wright took the mineral estate under an agreement whereby he was to hold the mineral rights in trust for the designated beneficiaries.

Plaintiffs' second challenge to the use of the affidavit is the parol evidence rule. The parol evidence rule renders ineffective proof of a prior or contemporaneous oral agreement which alters, varies, or contradicts the terms of a written agreement. *Harmon Cable Communications v. Scope Cable Television*, 237 Neb. 871, 468 N.W.2d 350 (1991). Plaintiffs contend that since the mineral deed is plain and unambiguous, the parol evidence rule bars use of the affidavit to prove a contemporaneous oral trust, since to prove such a trust would be to change the terms of the deed from an absolute grant of the mineral estate into a trust of that estate.

However, plaintiffs' application of the parol evidence rule is incompatible with the rule that a later writing signed by the trustee may satisfy the statute of frauds. Part IV(1)(a), *supra*. This is so because the only facts which could give rise to such a rule would include an earlier absolute deed to the purported trustee.

Restatement (Second) of Trusts § 38 (1959) states that if the owner of property makes an inter vivos transfer by a written instrument which declares that the transferee is to take the property for his or her own benefit, then absent proper grounds for rescission or reformation, the parol evidence rule will bar extrinsic evidence that the transferee was intended to hold the property in trust. But if the instrument does not declare that the transferee is to take the property either for his or her own benefit or in trust, then extrinsic evidence may be admitted to show how the transferee was intended to hold the property. Under this rule, the affidavit would be admissible, since the mineral deed is silent as to how Floyd E. Wright was to hold the property.

The reason the parol evidence rule is not applied in situations such as that now before us is simple, though rarely articulated. The parol evidence rule is applicable only where there is a completely integrated written agreement, and a deed is not, generally, intended to be a complete integration of the underlying agreement. Therefore, the rule is rarely applicable. See 3 A. Corbin, Corbin on Contracts § 587 (1960). Where the instrument states that the transferee is to take for his or her own benefit, then that much of the agreement is integrated and parol

evidence is barred. But as we have said, that is not the case here.

Plaintiffs also contend that the "statements" of Floyd E. Wright, as contained in the affidavit and the warranty deed, are inconsistent (the affidavit saying there was a trust and the warranties in the deed stating he had power to convey) and that we therefore should disregard both. Aside from the fact that the authority plaintiffs cite is clearly inapplicable to the facts before us, if we were to disregard the warranty deed, plaintiffs would be unable to claim it was meant to pass title to the minerals. The authority cited by plaintiffs is inapplicable because it deals with situations where a person changed his or her testimony, and the change was " 'clearly being made to meet the exigencies of the pending action . . . .' " *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 53, 313 N.W.2d 208, 213 (1981). As far as the record discloses, the "statements" of Floyd E. Wright were not made to the exigencies of any action, pending or otherwise. In addition, *Momsen* applies to the testimony of parties to an action, and Floyd E. Wright was not a party here. See *Palmer v. Forney*, 230 Neb. 1, 429 N.W.2d 712 (1988).

Thus, the parol evidence rule does not bar use of the affidavit. Moreover, as concluded in part IV(1)(a), *supra*, it is sufficient to satisfy the requirements of the statute of frauds, and, under § 76-271, it is prima facie evidence of the facts it recounts. All the other elements of a valid trust are present: (1) a competent settlor (Elizabeth R. Wright), (2) a trust property (the mineral estate), legal title to which has been transferred to (3) a competent trustee. Restatement (Second) of Trusts § 2, comment *h*. (1959). The district court thus erred in concluding that there existed no trust of the mineral rights.

## 2. TRANSFERENCE OF SURFACE ESTATE

The next inquiry is whether the warranty deed executed by Floyd E. Wright and his wife nonetheless conveyed the mineral rights to plaintiffs, as the district court found, and, if not, whether plaintiffs acquired the mineral estate in some other way.

Neb. Rev. Stat. § 76-268 (Reissue 1990) provides as follows:

> If any conveyance of the title to, or any right or interest in real estate . . . shall be made after July 24, 1917, to any

person . . . as trustee without naming any beneficiary and without any declaration of the terms of the trust having been executed and recorded in the manner prescribed by statute, in the office of the register of deeds of the county in which such real estate is located, it shall be conclusively presumed that such person . . . as trustee, has power and authority to convey the title, right and interest in such real estate which has been conveyed to him . . . and a purchaser from such trustee shall not be bound to inquire or ascertain the terms of the trust, unless before such conveyance . . . has been made by such trustee, the person claiming a beneficial interest therein shall have filed a notice as provided in section 76-267, in the office of the register of deeds of the county in which said real estate is located.

The "notice as provided in section 76-267" is a statement, supported by the affidavit of the person claiming a beneficial interest, identifying the affiant's residence and giving a description of the property and the affiant's interest therein. Neb. Rev. Stat. § 76-267 (Reissue 1990).

Floyd E. Wright was not only trustee of the mineral trust but was also a beneficiary. As such, he was a person claiming a beneficial interest in the minerals. His affidavit gives his residence, describes the property, and states the interest claimed. The affidavit was filed with the register of deeds. It therefore qualifies as notice under §§ 76-267 and 76-268. The question at this point is: Was the notice filed before such conveyance was made by such trustee?

All deeds, mortgages and other instruments of writing which are required to be or which under the laws of this state may be recorded, shall take effect and be in force from and after the time of delivering the same to the register of deeds for recording, and not before, as to all creditors and subsequent purchasers in good faith without notice; and all such deeds, mortgages and other instruments shall be adjudged void as to all such creditors and subsequent purchasers without notice whose deeds, mortgages or other instruments shall be first recorded; *Provided*, that such deeds, mortgages and other

instruments shall be valid between the parties.
Neb. Rev. Stat. § 76-238 (Reissue 1990).

Both the warranty deed and the affidavit are instruments within the meaning of this provision. The affidavit was recorded 1 minute before the deed was filed and therefore took effect before the deed. Thus, there is no conclusive presumption that Floyd E. Wright had the power and authority to convey title to the mineral estate. Because they had notice, plaintiffs had a duty under § 76-268 to inquire or ascertain the terms of the trust.

Moreover, since, as first established in part IV, *supra*, those seeking to quiet title must rely on the strength of their own title and not on the weakness of the title of others, plaintiffs had the burden of demonstrating that Floyd E. Wright had the power to sell the mineral estate. This they failed to do. While a trustee acting under the Nebraska Trustees' Powers Act, Neb. Rev. Stat. §§ 30-2819 et seq. (Reissue 1989), might have such authority, the sale in question predates that act by several years. The applicable rule, therefore, is that found in Restatement (Second) of Trusts § 190 at 418 (1959):

The trustee can properly sell trust property if

(a) a power of sale is conferred in specific words, or

(b) such sale is necessary or appropriate to enable the trustee to carry out the purposes of the trust, unless such sale is forbidden in specific words by the terms of the trust or it appears from the terms of the trust that the property was to be retained in specie in the trust.

See, also, *Clark v. Fleischmann*, 81 Neb. 445, 116 N.W. 290 (1908) (trustee of testamentary trust could not sell trust corpus unless will provided express power of sale). We have no evidence that a power of sale was conferred in the agreement creating the trust, nor was any evidence adduced to indicate the sale was necessary or appropriate to carry out the purposes of the trust. We thus cannot conclude that Floyd E. Wright had the power to sell the mineral estate.

Plaintiffs nonetheless contend that Neb. Rev. Stat. § 76-269 (Reissue 1990) prevents defendants from attacking the warranty deed executed by Floyd E. Wright and his spouse, which by its terms purports to transfer the entire estate, both

surface and mineral. Section 76-269 provides, in relevant part, that

> no action shall be maintained whereby to set aside, cancel, annul, declare void or invalid any deed of conveyance . . . or other instrument affecting the title to any real estate, which has been recorded in the office of the register of deeds . . . for more than fifteen years prior to the commencement of such action, and purporting to be executed by any executor, administrator, guardian, receiver or trustee, notwithstanding any defect in, or absence of, any record of the court granting authority to such executor, administrator, guardian, receiver or trustee to execute the same.

Leaving aside the questions of whether the deed purports to be executed by Floyd E. Wright as trustee, whether the deed purports to convey the mineral estate, and whether this is an action to set aside or void the deed, § 76-269 is nevertheless inapplicable to the facts before us.

The action was commenced when plaintiffs filed their petition. Neb. Rev. Stat. § 25-501 (Reissue 1989). The petition was filed June 21, 1988. The deed was recorded August 13, 1973. This action was thus commenced less than 15 years after the deed was recorded and is therefore not within the ambit of § 76-269.

Finally, plaintiffs argue that, in any event, they acquired the mineral estate by adverse possession. One who claims title by adverse possession must prove by a preponderance of the evidence that he or she has been in actual, continuous, exclusive, notorious, and adverse possession under claim of ownership for the full 10-year statutory period. *Paasch v. Brown*, 217 Neb. 761, 351 N.W.2d 74 (1984). The sufficiency of the possession is dependent upon the character of the land and the use which can reasonably be made of it. *Young v. Lacy*, 221 Neb. 511, 378 N.W.2d 192 (1985). Plaintiffs' claim of adverse possession must therefore be judged in reference to the fact that the property claimed is a severed mineral estate.

When, as here, there has been a severance of the mineral estate from the surface estate, mere occupancy of the surface is insufficient to establish title to the minerals by adverse

possession. "An actual, public, notorious and uninterrupted working of the minerals for the statutory period is generally required. The mere execution, delivery, or recording of oil and gas leases or mineral deeds will not constitute adverse possession." H. Williams & C. Meyers, Oil and Gas Law § 224.4 at 54 (abridged ed. 1984). In order to bring this statement into line with Nebraska's law on adverse possession, we add that the working of the minerals must also be under claim of ownership. Since plaintiffs have offered no evidence that there has been any actual working of the minerals, their claim of adverse possession must also fail.

## V. ANALYSIS OF CROSS-APPEAL

Plaintiffs' cross-appeal challenges the district court's exclusion of testimony to the effect that the parties intended to transfer the minerals along with the surface estate, as detailed in part II, *supra*. This is a question we need not reach, for plaintiffs have failed to show that Floyd E. Wright had authority to convey the mineral estate. Absent such authority and in light of plaintiffs' knowledge of the trust, whether a transfer was intended is irrelevant.

## VI. DECISION

Accordingly, the decree of the district court quieting title to the mineral estate in and to the plaintiffs must be, and hereby is, reversed.

REVERSED.

HASTINGS, C.J., not participating.