SANFORD *v.* COWAN

No. 43041          May 11, 1964          163 So. 2d 682

*George P. Hewes, III, Brunini, Everett, Grantham & Quin,* Jackson, for appellant.

*Watkins & Eager, William Champion,* Jackson, for appellee.

LEE, C. J.

Edward Wilson Cowan on March 22, 1962, filed his bill of complaint against his wife, Mrs. Marion Kiser Cowan, alleging that they were married on April 16, 1949 and were separated on September 27, 1961; and that there were three children born of the marriage, to-wit: Marion, age 9, Edward, age 7, and Helen, age 2. He charged the defendant with habitual cruel and inhuman treatment, beginning in September 1960 and continuing thereafter until separation, for which he sought a full and complete divorce.

The defendant, in her answer, denied all of the material allegations of the bill of complaint, and made her answer a cross-bill, in which she sought separate maintenance for herself and children and attorneys' fees. This pleading was filed May 21, 1962. She had theretofore caused a lis pendens notice to be placed on the records of Madison County, under date of May 18, 1962, which effectually gave notice that all of the property of

the complainant in the county, consisting of a farm of approximately 7960 acres, stocked with about 1750 head of cattle, and other real estate, was affected thereby.

Complainant promptly filed a motion to expunge the lis pendens notice from the record. On the hearing thereof on the 28th day of May 1962, it developed that the complainant was negotiating the sale of the farm and cattle for approximately $1,005,000; that the farm was already heavily involved at the time and the lis pendens notice prevented both temporary financing to feed the cattle on the ranch and progress in the negotiation for the sale. Less than three weeks time remained, under the option, for the consummation of this transaction. It was shown that the aggregate debts or obligations, chargeable against the property, amounted to approximately $633,531, and that the estimated proceeds of the sale would amount to $1,005,000, thereby enabling the complainant to net approximately $371,469, if the sale was consummated. This was shown to be a fair price and an advantageous sale, and that it was necessary to prevent imminent foreclosure.

The court held that the exigency of the situation required that the sale should not be interfered with; that the relative rights of the parties in all respects could await the final hearing on the merits; that the lis pendens should be removed as far as the sale of the farm and cattle were concerned; but that, out of the net proceeds, there should be escrowed $100,000, which, when taken with the remaining property, would be a sufficient guaranty that the complainant would be in financial condition to take care of his obligations in the maintenance of his wife and children if and when a decree of divorce might be granted, or even if not granted. The deposit in the registry of the court of $100,000 in cash or a like amount in United States or other government obligations, or in First Federal Savings & Loan Association subject to the order of the

court, or entering into bond in a penalty of $100,000, with corporate surety, conditioned to pay all sums which the court might decree to be due from the complainant to his wife and children was made a condition precedent to the expunction of the lis pendens from the property involved in the sale.

Thereafter the pleadings were amended so that all issues were fully stated to the court.

On July 12, 1962, the trial of the cause on its merits began. The complainant testified in great detail in an effort to establish his right to a divorce. Following a recess, counsel for both sides announced to the court that a settlement of the financial question had been reached. The cause then proceeded to a conclusion on the amended cross-bill of the defendant as an uncontested divorce action, with no further evidence being made of record.

The final decree granted Mrs. Cowan a divorce and the custody of the three minor children, and ordered the complainant to pay her as alimony $1500 per month commencing August 1, 1962, and continuing through and including December 1, 1962, and then $500 per month, commencing January 1, 1963, and monthly thereafter as long as she should remain entitled thereto under the law. Support for each of the children, in the sum of $200 per month, was to commence August 1, 1962, and continue monthly thereafter to each child until age 25. Other requirements were also provided when the children should attend college. The complainant was to carry a life policy of $125,000 in which the three children were to be named as beneficiaries. In addition, he was to deposit $125,000 in the First Federal Savings & Loan Association or such other institution as the court might designate, and this amount and the securities at all times were to be approved by the court. The decree recited that this deposit or securities should stand as security for the performance by the complainant of all

terms of the decree. The decree also provided for the return of the securities to the complainant in case of the death of all of the children. But in that event, the complainant was to post a surety bond in a penalty of not less than $40,000 for the purpose of guaranteeing the payment of such alimony as Mrs. Cowan might be then entitled to under the law.

The decree further provided: "Said deposit and/or securities shall stand as security for the performance by Edward Wilson Cowan of all of the terms of the decree."

The decree also provided that: "Edward Wilson Cowan shall be entitled to receive for his own use or benefit, as and when due and payable, all income from said funds, deposits or securities, whether by way of interest, dividends, or otherwise."

The lis pendens notice was to be cancelled immediately upon the deposit of the fund or securities of $125,000.

Other provisions were set out in the decree, but none of them seem to have entered into this controversy.

On May 10, 1963, Edward Wilson Cowan presented a petition to the court to have a capital gain income of $4,090.79, arising as a profit from the purchase and sales of some stocks, to be paid to him; for a modification of the decree of July 13, 1962, in order to reduce the required fund from $125,000 to $75,000 because of the marriage of Mrs. Cowan to John B. Sanford, Jr., in the month of February 1963; and to reduce the payment for child support from $600, that is, $200 each for the three children, to $300, that is $100 per month for each child.

The petition was answered and contested by Mrs. Sanford.

After the hearing and argument, the court delivered an oral opinion, particularly citing Section 2743 of the Code. The chancellor was of the opinion that, since the amount of $200 per month for the support of each

of the children had been fixed only nine months before, no change should be made in this allowance at that time.

The chancellor observed that his primary concern in setting up the security fund was to make provision for the support and maintenance of those dependent upon the complainant, and that he was not interested in some gift in the future for the children when they might become 25 years of age. He referred to the requirement concerning the $125,000 of life insurance for the children and the $125,000 fund, observing that it was to stand as security for the performance by Cowan of all of the terms of the decree. He was not then interested in whether or not it was a gift inter vivos or otherwise. Consequently when the donor said that he had no intention of doing this, and the language bears out the statement, the court was not interested in declaring it incidentally as a gift in the decree of divorce. Inasmuch as Mrs. Cowan had contracted another marriage and Mr. Cowan was no longer responsible to continue her support, the $125,000 security fund should be reduced by $40,000 so as to remain at $85,000.

It was further observed that in view of the provision of the decree, particularly when it provided that Cowan was to receive all income from the funds "whether by way of interest, dividends, or otherwise", that it was contemplated that he should keep the fund at the original level and was entitled to have refunded to him any appreciation to the purchase price in the nature of gain.

The chancellor was also of the opinion that the plea in abatement should be dismissed because of the failure to have the children made parties and likewise the plea of res judicata.

An attorney's fee to the contestant was denied.

The decree was in accordance with the oral finding of the court, which provided further that, if a loss should occur in the funds, Cowan should make it good before he could receive any further income from the funds.

Appellant contends that the court had no authority to modify or change the terms of the final decree of July 13, 1962. On the one hand, she says that the $125,000 was a gift inter vivos. On the other, she concedes that the language is "a hybrid sort of arrangement which may be akin to a trust, as was suggested in our answer". She also says that it was an award of alimony, commuted to a lump sum, and for that reason, could not be changed. Then again she says that it was a property settlement, incorporated in a divorce decree, and was not subject to modification or change.

The chancellor based his conclusion on Section 2743, Code of 1942 Rec. The applicable part thereof is as follows: "When a divorce shall be decreed from the bonds of matrimony, the court may, in its discretion, having regard to the circumstances of the parties and the nature of the case, as may seem equitable and just, make all orders touching the care, custody and maintenance of the children of the marriage, and also touching the maintenance and alimony of the wife, or any allowance to be made to her, or may, if need be, require sureties for the payment of the sum so allowed; and the court may afterwards, on petition, change the decree, and make from time to time such new decrees as the case may require. * * *". In other words, alimony, child support, security therefor, and orders and decrees pertaining thereto, are all grouped together in this statute.

In McClellan v. McCauley, 158 Miss. 456, 130 So. 145, the opinion enumerated the essential elements of a gift inter vivos as follows: "The essential elements of a gift inter vivos are that there must be a donor competent to make it, with freedom of will on his part, and intention to make it; a donee capable of taking a gift, which must be complete, and nothing left undone. The property given must be delivered by the donor, and accepted by the donee; the gift must go into immediate

and absolute effect, must be gratuitous, and must be irrevocable.''

■■ ■ Without attempting to point out all of the deficiencies in this alleged gift, it should be kept in mind that the court required the impounding of $100,000 before it would expunge the lis pendens from the land to be sold. The balance of the real estate in Madison County and the one-half mineral interest over the whole 7900 acres of land, retained and reserved by Cowan of considerably greater value than $25,000, still remained under that notice. It would be hard indeed to find any basis for a conclusion that there was either freedom or an intent on the part of the appellee to make such a gift. Besides money or security in the sum of $100,000 was already in the registry or control of the court, which had already obtained this control through its decree. Neither was there a deposit in the names of the children, nor could the fund be touched unless Cowan failed to meet the terms of their maintenance. It was not vested in the children. It would actually be reduced if Cowan failed to make payments. Since the appellee was acting under the imminence of a decree of the court, it could hardly be said that he was acting gratuitously.

■■ ■ It is also true that ''No form of words is necessary to create a trust; but, looking to the acts and intentions of the parties, if it appear that it was their intention to create one, it is the duty of the court to declare and enforce it.'' Norman v. Burnett, 25 Miss. 183. 54 Am. Jur., Trusts, Sec. 30, pg. 43 enumerates certain essential elements, necessary to occur in the creation of a valid express trust, to-wit: ''Certain essential elements must occur in the creation of a valid express trust, irrespective of the mode or character of instrument by which it is created. These essential elements include the following: (1) a person competent to create the trust; (2) indication of intention; (3) property to which the trust may and does pertain; (4) a

definite and complete present disposition of that property, although to take effect in enjoyment in the future; (5) a provision, at least by implication, for the office of trustee, although the nomination of a trustee is not essential; and (6) a person capable of holding the equitable interest in the property as beneficiary, although such person may be undetermined or unborn. It is essential, too, that the purpose be an active one to prevent the trust from being executed into a legal estate or interest, and one that is not in contravention of some prohibition of statute or rule of public policy. There must also be some power of administration other than a mere duty to perform a contract although the contract is for a third-party beneficiary. A declaration of terms is essential, and these must be stated with reasonable certainty in order that the trustee may administer, and that the court, if called upon so to do, may enforce, the trust.''

Looking at the decree in its entirety, giving due consideration to the language, and keeping in mind all of the attendant facts and circumstances, the court is of the opinion that the learned chancellor was not precluded on the basis of either a gift inter vivos or a trust from amending the decree, but that he was well warranted in concluding that the decree was subject to change, under the provisions of Section 2743 of the Code, supra.

In justification of her claim that this decree constituted an award of alimony, commuted to a lump sum, the appellant cites certain authorities, especially Guess v. Smith, 100 Miss. 457, 56 So. 166, under which she maintains that the chancellor had no authority to interfere with this decree. But, in that case, the wife obtained a divorce. Both temporary and permanent alimony were commuted to the sum of $250, and the decree required it to be paid at once. It was not a case where the decree provided for permanent continuing

alimony to be paid in fixed amounts at stated intervals in the future, as in the present case. That is the clear distinction and makes the factual difference between that case and the present question. Vaughan v. Vaughan 226 Miss. 153, 83 So. 2d 821, also cited by appellant, was an instance where the decree merely perfected the deed, which Vaughan had previously executed, so that it would conform to the order of the court.

The other contention of the appellant, to the effect that this fund constituted a property settlement, and that even though it was incorporated in a divorce decree it could not be modified or changed, is deemed now untenable in view of the court's conclusion that the fund constituted mere security to guarantee the performance by appellee of his obligations, as adjudged by the court. For a like reason, the plea in abatement, because the children were not made parties, was properly overruled.

It must also be remembered that the petition for modification of the decree sought relief in three particulars. This brought the decree under attack. The mother successfully defended the decree in preventing a reduction of the support to the children. The court also, following the contest, reduced the security to $85,-000 instead of $75,000, as prayed for by petitioners. This Court is therefore of the opinion that the court should have allowed appellant a fee for her attorneys. Walters v. Walters, 180 Miss. 268, 177 So. 507; Gresham v. Gresham, 199 Miss. 778, 25 So. 2d 760; Lindsey v. Lindsey, 219 Miss. 540, 69 So. 2d 203. The court having declined to award a fee, it was necessary for her to prosecute an appeal here to obtain relief.

The decree on the merits was correct, and is therefore affirmed in those respects. But the cause will be remanded for the allowance of a reasonable fee for the appellant's attorneys in the trial court. It is the rule of this Court to fix fees for services performed on ap-

peal here at one-half of the fees allowed in the trial court. Consequently, this Court now fixes as the fee for the appellant's attorneys for services rendered in this Court one-half of the amount, which shall be allowed by the trial court for such services in the trial court, and that amount shall be added to the amount of that decree. Let the costs be paid by the appellee.

Affirmed in part, and in part, reversed and remanded under directions.

*Gillespie, McElroy, Rodgers and Brady, JJ.,* concur.