## ROBERT L. KING, as the TRUSTEE for WINSTON LIBURD, Appellant/Plaintiff
## v.
## MACKCHESNEY APPLETON, Appellee/Defendant

S. Ct. Civil No. 2012-0138

Supreme Court of the Virgin Islands

October 6, 2014

ROBERT L. KING, ESQ., Law Offices of Robert L. King, St. Thomas, USVI, *Pro se*.

MACKCHESNEY APPLETON, St. Thomas, USVI, *Pro se*.[1]

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(October 6, 2014)

CABRET, *Associate Justice*. Attorney Robert L. King, Esq., appeals the Superior Court's dismissal of his action to evict Mackchesney Appleton from three parcels of land on St. Thomas. He argues that he holds the property in trust for a former client and that because Mackchesney[2] defaulted, the Superior Court should have held a hearing to establish damages and then entered default judgment. Because we agree with King, we hold that the Superior Court erred in dismissing his complaint, and we reverse and remand for further proceedings.

---

[1] Mackchesney Appleton did not file a brief or otherwise participate in this appeal.

[2] Because this case concerns numerous members of the Appleton family, we refer to them by their first names.

## I. FACTUAL AND PROCEDURAL BACKGROUND

After the United States District Court of the Virgin Islands awarded Winston Liburd — who was represented by King — a personal injury judgment of approximately $1.5 million against Gilbert Appleton, Gilbert was found to have no assets and the judgment went unpaid. Several years later, Liburd discovered that at the time of the judgment Gilbert had legal title to Parcels 173-B60, 173-B61, and 173-B61A of Estate Anna's Retreat on St. Thomas. But Gilbert defaulted on his mortgage in 2003, and Allan Harrigan later bought the property from the bank. Harrigan and Gilbert entered into an agreement allowing Gilbert to continue living on the property with his family and collecting rent from apartments on the property. In return, Gilbert agreed to pay Harrigan a monthly fee to cover Harrigan's mortgage and provide him a small profit.

Once Liburd discovered this agreement, Harrigan agreed to cooperate in his attempt to take possession of the property and use it to recover on the District Court judgment. In pursuit of this goal, Liburd, King, and Harrigan executed four agreements over the course of a year: a July 14, 2008 agreement, a December 11, 2008 warranty deed, a June 9, 2009 promissory note, and a purchase money mortgage also dated June 9, 2009. In the July 14, 2008 agreement, Harrigan agreed to "do . . . whatever is necessary to exclusively take physical possession" of the property, "including filing an action for forcible entry and detainer, filing an action for eviction, or filing such other action" necessary to gain sole physical possession of the property. King agreed to represent Harrigan in this action and advance the costs of litigation, to be reimbursed from the proceeds of the sale of the property. In return, Liburd agreed to immediately take over payment on Harrigan's mortgage and to pay Harrigan $84,850 from the sale of the property — with the remainder of the proceeds paid to King's escrow account for distribution between King and Liburd according to their contingency fee agreement from the District Court lawsuit.

Harrigan then served a notice to quit on Gilbert and brought an action against him for forcible entry and detainer. On December 9, 2008, the Superior Court ordered Gilbert to leave the property, but declined to evict Gilbert's son Mackchesney. Harrigan then transferred the property to King in trust for Liburd in an unrecorded December 11, 2008 warranty deed in return for $214,000. In satisfaction of the $214,000, Liburd

executed a June 9, 2009 promissory note largely repeating the terms of the July 14, 2008 agreement, providing that Liburd would pay Harrigan $84,850 from the proceeds of the sale of the property, and $129,150 to satisfy Harrigan's mortgage. King and Liburd also executed a June 9, 2009 purchase money mortgage promising payment of the $214,000 to Harrigan.

King, as trustee for Liburd, filed this action against Mackchesney in the Superior Court on July 14, 2010, alleging trespass, common law fraud, civil conspiracy, and conversion. After Mackchesney was served with notice of the suit on August 11, 2010, he did not respond to the complaint or otherwise appear, and King moved for entry of default and later requested a default judgment hearing. With this motion, King also filed an affidavit stating that he had title to the Anna's Retreat property and that Mackchesney refused to leave the property despite service of a notice to quit on November 13, 2009.

On November 12, 2010, the Superior Court denied King's motion pending a "hearing to establish his claims because many issue[s remain] unanswered." Nearly a year later, on August 31, 2011, the Superior Court held this hearing. After nearly another year, the Superior Court entered two orders on June 18, 2012, the first signed by the Clerk of the Superior Court, entering default against Mackchesney. In the second order, the Superior Court indicated that it had "reviewed the Agreement of July 14, 2008, the Warranty Deed of December 11, 2008, the Promissory Note of June 9, 2009, the Purchase Money Mortgage of June 9, 2009, the transcript of the August 31, 2011 hearing, and the filings to date," and ordered King to file answers to 45 questions regarding the alleged trust and its terms, which King responded to on July 19, 2012. King then filed an affidavit from Harrigan on September 13, 2012, in which Harrigan stated that although he was the title holder of record on the property, he had "executed a deed in favor of Attorney King as trustee for Winston Liburd" that had not been recorded. Finally, in a November 30, 2012 order, the Superior Court denied King's motion for default judgment and dismissed his complaint with prejudice, holding that the December 11, 2008 warranty deed did not create a valid trust. King filed a timely notice of appeal on December 11, 2012. See V.I.S.Ct.R. 5(a)(1).

## II. JURISDICTION

This Court has jurisdiction "over all appeals arising from final judgments, final decrees or final orders of the Superior Court." 4 V.I.C.

§ 32(a). The Superior Court's November 30, 2012 order dismissing this case with prejudice is a final order under section 32, and therefore we have jurisdiction over this appeal. *Cacciamani & Rover Corp. v. Banco Popular*, 61 V.I. 247 (V.I. 2014).

## III. DISCUSSION

King argues that the December 11, 2008 warranty deed was a valid "conveyance of the subject property" to him to hold for Liburd's benefit, satisfying the common law elements of a trust. We review the Superior Court's denial of a motion for default judgment for an abuse of discretion. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (the trial court's "refusal to enter a default judgment is subject to review under the abuse of discretion standard"); *cf. Martinez v. Colombian Emeralds, Inc.*, 51 V.I. 174, 187 (V.I. 2009) ("A denial of a motion for entry of default is reviewed for abuse of discretion."). In conducting this review, we examine the Superior Court's conclusions of law — including its interpretation of a court rule — *de novo* and its findings of fact for clear error. *Simmonds v. People*, 59 V.I. 480, 485-86 (V.I. 2013); *Mustafa v. Camacho*, 59 V.I. 566, 570 (V.I. 2013).

## A. Effect of Mackchesney's Default

Entry of default and default judgment are separate matters under Superior Court Rules 47 and 48. Rule 47 governs the entry of default in the Superior Court and provides that "[w]hen a party against whom affirmative relief is sought has failed to appear, plead or otherwise defend as provided by law or these rules, or has failed to appear at the time fixed for trial, the clerk shall enter his default." Here, Mackchesney was served with the complaint and notice of the suit on August 11, 2010, and had until August 31, 2010, to enter an appearance or file an answer. See SUPER. CT. R. 32(a) ("The defendant may defend by entering his appearance before the clerk or by filing an answer with the clerk within 20 days after service of the summons and complaint."). After Mackchesney failed to respond for nearly two years, the Superior Court properly entered default against him on June 18, 2012. *Appleton v. Harrigan*, 61 V.I. 262 (V.I. 2014) (affirming an entry of default under Rule 47 where the party failed to respond for several months).

 Because Mackchesney, "by his default, admitted the plaintiff's well-pleaded allegations of fact, [he] is concluded on those facts by the judgment, and is barred from contesting the facts thus established." *Id.* (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *see also Bank of Nova Scotia v. Dore*, 57 V.I. 105, 110 (V.I. Super. Ct. 2012) (after the entry of default "a trial court accepts the factual allegations of the complaint as true, except for those averring the amount of damages"). But "[t]he corollary of this rule . . . is that a defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu*, 515 F.2d at 1206 (citing *Thomson v. Wooster*, 114 U.S. 104, 113, 5 S. Ct. 788, 29 L. Ed. 105, 1885 Dec. Comm'r Pat. 279 (1885)).[3] Accordingly, after entering default the Superior Court must "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010); *see also Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quoting 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 2688 (3d ed. 1998)).

 Therefore, the mere fact of Mackchesney's default did not entitle King to the entry of a default judgment against him; instead, Mackchesney's default only conceded the facts as alleged in King's complaint. Before entering a default judgment, the Superior Court was still required to determine whether these facts constituted a valid cause of action under Virgin Islands law, and if so, to hold a default judgment hearing to establish the amount of damages.[4] *Dore*, 57 V.I. at 110-11 ("[W]hen reviewing the allegations of a complaint to determine whether to award a judgment by default, the Court essentially looks at the pleading

---

[3] As we recently explained, "the entry of default in the Superior Court is governed exclusively by Superior Court Rule 47, and not Federal Rule of Civil Procedure 55(a), [but] because these rules are nearly identical we may look to federal decisions interpreting Rule 55(a) for persuasive authority." *Appleton*, 61 V.I. at 269 n.8.

[4] A default judgment hearing is necessary except "[w]hen the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain." SUPER. CT. R. 48(a)(1); *see Appleton*, 61 V.I. at 270 ("[A] claim is not a sum certain unless no doubt remains as to the amount to which a plaintiff is entitled as a result of the defendant's default." (quoting *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003))).

through a prism similar to that used when ruling on a motion to dismiss for failure to state a claim."); *Appleton*, 61 V.I. at 269 (after entry of default, damages "generally must be established in an evidentiary proceeding [where] the defendant is afforded the opportunity to contest the amount claimed" (quoting *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012))); SUPER. CT. R. 48(a)-(b).

## B. Validity of the Warranty Deed

In considering whether the facts in King's complaint constituted a legitimate cause of action, the Superior Court held that the December 11, 2008 warranty deed did not create a valid trust because it was unrecorded and "King ha[d] conceded in an ancillary action that . . . Harrigan . . . is the owner of the subject property" — referencing the answer King filed on Harrigan's behalf as his attorney in a separate foreclosure action. King argues that regardless of whether the warranty deed was recorded, it still constituted a legal transfer of property, and that the Superior Court erred in considering a document filed by King on Harrigan's behalf as a concession on King's part. We agree on both counts.

 This Court squarely addressed the requirements of a valid conveyance of real property in *Harvey v. Christopher*, 55 V.I. 565, 574 (V.I. 2011). There we explained that "a person may transfer ownership of real property during his or her lifetime 'by a deed of conveyance or other instrument in writing' that is 'signed by the person' doing the transfer or his agent 'and executed with such formalities as are required by law.' " *Id.* at 574 (quoting 28 V.I.C. § 241(a)(2)). The required formalities are defined by title 28, sections 41 and 42(a) of the Virgin Islands Code, which provide that the person transferring the property be of legal age and that the deed be executed in the presence of two signing witnesses. *Id.*; *see* 28 V.I.C. §§ 41, 42(a). The warranty deed here satisfied these requirements: Harrigan — as the person making the conveyance — signed the deed, executing it in the presence of two signing witnesses. And even though the warranty deed was never recorded, this only "render[s] it ineffective as to innocent purchasers for value" under 28 V.I.C. § 124, but does "not affect its validity as a conveyance binding upon the parties to it." *Harvey*, 55 V.I. at 574. There is nothing here to indicate that Mackchesney is an "innocent purchaser[ ] for value," *id.*, and in any case, Mackchesney conceded any argument he could have made to the contrary by defaulting.

■ ■ Moreover, the Superior Court's finding that "King ha[d] conceded in an ancillary action that . . . Harrigan . . . is the owner of the subject property" was clearly erroneous. *Najawicz v. People*, 58 V.I. 315, 325 (V.I. 2013) (this Court reviews the Superior Court's factual findings regarding a party's conduct for clear error). As King points out, Harrigan's admission in the foreclosure proceeding was not part of the record in this case. But regardless of whether the Superior Court erred in taking judicial notice of Harrigan's answer in the foreclosure proceeding, *see In re J.J.J.*, 59 V.I. 319, 329 (V.I. 2013) (the Superior Court "may take judicial notice of the existence of a document that has been filed with it" in another proceeding), it was clearly improper for the Superior Court to attribute this admission to King. As Harrigan's attorney in that action, King acted only on Harrigan's behalf, and an attorney's filings on a client's behalf are attributable to the client only in all but the rarest of circumstances. *Cf. Williams v. People*, 58 V.I. 341, 346 n.2 (V.I. 2013) (attributing an attorney's arguments to the attorney — and declining to impute them to the client — only where those arguments were directly opposed to the client's interests). Because it was improper to attribute this statement to King, the Superior Court's finding that King conceded ownership of the property was "completely devoid of minimum evidentiary support," and was therefore clearly erroneous. *Yusuf v. Hamed*, 59 V.I. 841, 857 (V.I. 2013) (quoting *In re Estate of Small*, 57 V.I. 416, 430 (V.I. 2012)). Consequently, the Superior Court erred in holding that the December 11, 2008 warranty deed was not an effective transfer of Parcels 173-B60, 173-B61, and 173-B61A of Estate Anna's Retreat.

### C. Express Trusts at Common Law

The Superior Court also held that even if the December 11, 2008 warranty deed served as a valid conveyance of the property, the trust was invalid because it was not executed for Liburd's benefit, reasoning that "it would be ludicrous to create a trust . . . which saddles . . . Liburd with mortgage payments in return for merely a share of the fourth priority disbursement of the trust property's liquidation with no guarantee that [he] will ever recoup mon[ey] paid against the mortgage." King insists that, as a valid transfer of the property, the December 11, 2008 warranty deed created an enforceable trust that did not impose any additional duties on Liburd other than those contained in the previous agreements.

■ ■ We again agree with King, but not on the grounds he suggests. King argues that under the Restatement (Second) of Trusts — which he

348

asserts applies in this action under former 1 V.I.C. § 4 — the December 11, 2008 warranty deed created a valid common law express trust. The Superior Court agreed with King that the Restatements govern, indicating that "the elements of a valid trust are dictated by the Restatement (Second) of Trusts, until otherwise ruled by the Supreme Court of the Virgin Islands." But the Legislature implicitly repealed 1 V.I.C. § 4 — which formerly provided that "the restatements of the law . . . shall be the rules of decision in the courts of the Virgin Islands" — by vesting this Court with " 'the supreme judicial power of the Territory,' " *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 978 (V.I. 2011) (quoting 4 V.I.C. § 21), and "the Restatements of Law no longer constitute the rules of decision in Virgin Islands courts." *Brunn v. Dowdye*, 59 V.I. 899, 911 n.10 (V.I. 2013). Instead, in "addressing issues of Virgin Islands common law that this Court has yet to address," the Superior Court must conduct the three-factor analysis first outlined in *Banks*: "first examining which common law rule Virgin Islands courts have applied in the past; next identifying the rule adopted by a majority of courts of other jurisdictions; and then finally — but most importantly — determining which common law rule is soundest for the Virgin Islands." *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 757 (V.I. 2014) (citing *Gov't of the V.I. v. Connor*, 60 V.I. 597, 602-04 (V.I. 2014)).[5] Accordingly, because this Court has yet to determine the elements of an express trust at common law under the appropriate analysis, the Superior Court erred in applying a common law rule without examining the *Banks* factors. *Better Bldg. Maint. of the V.I., Inc.*, 60 V.I. at 757 ("[T]he Superior Court err[s] by applying a common law rule this Court has never addressed without first conducting the appropriate analysis."); *Connor*, 60 V.I. at 603-04. And although the elements of an express trust we ultimately adopt here are similar to those outlined in the Restatements, this does not mitigate the necessity of conducting a *Banks* analysis in order to avoid "mechanistic and uncritical reliance on the Restatements," which "has the effect of inappropriately

---

[5] The Legislature adopted the 1937 Uniform Trusts Act in 1957. *See* 15 V.I.C. §§ 1091-1111. However, "[d]espite a title suggesting comprehensive coverage of its topic, this Act . . . addresses only a limited number of topics. These include the duty of loyalty, the registration and voting of securities, and trustee liability to persons other than beneficiaries," and does not address the elements required to create a valid trust. UNIF. TRUST CODE (2010) (prefatory note). Therefore, despite the adoption of the 1937 Uniform Trusts Act, the elements of a valid trust in the Virgin Islands remain solely a question of common law.

delegating the judicial power of the Virgin Islands to the American Law Institute and to the governments of other jurisdictions." *Connor*, 60 V.I. at 602 (citing *Banks*, 55 V.I. at 980 & Kristen David Adams, *The Folly of Uniformity? Lessons From the Restatement Movement*, 33 HOFSTRA L. REV. 423, 456-57 (2004)); *see also Palisoc v. Poblete*, 60 V.I. 607, 613-15 (V.I. 2014) (adopting the elements of malicious prosecution recounted in a provision of the Second Restatement only after conducting a *Banks* analysis).

 Foundationally, "[a] trust is a legal instrument in which assets are held in the name of the trust and managed by a trustee for the benefit of a beneficiary." *Lewis v. Alexander*, 685 F.3d 325, 332 (3d Cir. 2012) (citing BLACK'S LAW DICTIONARY 1546 (8th ed. 2004)); *see also Pack v. Osborn*, 117 Ohio St. 3d 14, 2008 Ohio 90, 881 N.E.2d 237, 240 (2008) ("In general, a trust is defined as the right, enforceable in equity, to the beneficial enjoyment of property, the legal title to which is in another."). "The principles, rules, and standards of the law of Trusts owe their origin and development in large part to the circumstance that in England there were for centuries separate courts of common law and chancery." *Kesling v. Kesling*, 967 N.E.2d 66, 81 (Ind. Ct. App. 2012); *see Tutein v. Arteaga*, 60 V.I. 709, 716 & n.4 (V.I. 2014) (in addition to its jurisdiction over legal actions, the Superior Court has that of courts exercising "historic chancery or equity jurisdiction"). "The trust mechanism . . . vests legal title to trust property in a trustee, who has enforceable fiduciary duties to manage the property for the benefit of the beneficiaries" in order to "balance the conflicting desires of persons having interests in the same land."[6] Robert L. Glicksman, *Sustainable Federal Land Management: Protecting Ecological Integrity and Preserving Environmental Principal*, 44 TULSA L. REV. 147, 179-80 (2008). This relationship has been described as both a property interest and a contractual relationship, supplying "default terms that will be implied in the absence of explicit language to the contrary in the parties' contract." Henry Hansmann & Ugo Mattei, *The Functions of Trust Law: A Comparative Legal and Economic Analysis*, 73 N.Y.U. L. REV. 434,

---

[6] In this way, a trust is related to the legal action for waste, which is explicitly provided for in the Virgin Islands Code. *See* 28 V.I.C. § 335 ("A person seized of an estate in remainder or reversion may maintain a civil action for any injury done to the inheritance, notwithstanding any intervening estate for a life or years.").

439-40 (1998) (discussing the development of trusts at common law); *see* 15 V.I.C. § 1108 (providing that a beneficiary may relieve the trustee from the default terms provided for in title 15, chapter 57, "except as to the duties, restrictions, and liabilities imposed by" 15 V.I.C. §§ 1093-1095).

■ It does not appear that any court applying Virgin Islands law has ever explicitly adopted elements governing the creation of an express non-charitable trust.[7] Among other United States jurisdictions, 30 have adopted the comprehensive Uniform Trust Code of 2000 in some form.[8] Because the Legislature has not adopted this code, we limit our review of authorities to those cases decided at common law before the enactment of the Uniform Trust Code in these 30 jurisdictions, as well as the common law in the remaining jurisdictions that have yet to adopt a trust code.[9] *Malloy v. Reyes*, 61 V.I. 177 n.11 (V.I. 2014) (in conducting a *Banks* analysis, we exclude case law applying statutes from other jurisdictions). From this review, it is clear that there is virtually no deviation from the rule that in order to create a valid express trust — as opposed to constructive or resulting trusts, which we do not address here — there

---

[7] *But see In re Estate of Richards*, 35 V.I. 19, 22-25 (V.I. Super. Ct. 1996) (relying on the Second Restatement for the creation of a passive trust); *Hansen v. Gov't of the V.I.*, 53 V.I. 58, 79 (V.I. Super. Ct. 1999) (relying on the Second Restatement for the elements necessary to create a charitable trust).

[8] *See* The National Conference of Commissioners on Uniform State Laws, *Legislative Fact Sheet-Trust Code*, (2014), http://www.uniformlaws.org/LegislativeFactSheet.aspx?title= Trust%20Code, *archived at* http://perma.cc/7A7C-RXRW (the Uniform Trust Code has been enacted in some form in Alabama, Arizona, Arkansas, District of Columbia, Florida, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Mississippi, Missouri, Montana, Nebraska, New Hampshire, New Mexico, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, South Carolina, Tennessee, Utah, Vermont, Virginia, West Virginia, Wisconsin, Wyoming).

[9] The Uniform Trust Code (2010) was drafted "in close coordination" with the Restatement (Third) of Trusts, see UNIF. TRUST CODE (2010) (prefatory note), imposing the same requirements for the creation of a trust as recounted in the Second and Third Restatements. *See* UNIF. TRUST CODE (2010) art. IV (general comment) ("Sections 401 through 409, which specify the requirements for the creation of a trust, largely codify traditional doctrine."); UNIF. TRUST CODE (2010) § 401 cmt. ("This section is based on the RESTATEMENT (THIRD) OF TRUSTS [§] 10 and RESTATEMENT (SECOND) OF TRUSTS [§] 17."). Therefore, although we exclude cases applying the Uniform Trust Code from our analysis, *see Better Bldg. Maint. of the V.I., Inc.*, 60 V.I. at 757 (the second *Banks* factor requires us to identify the "rule adopted by a majority of *courts* of other jurisdictions"), this code serves to underscore the virtual uniformity among United States jurisdictions on the elements required to create an express trust.

must be (1) a valid conveyance of a trust property, (2) from a settlor who intends to create a trust, (3) to a trustee to hold legal title (4) for the benefit of a third party beneficiary. *See In re Estate of Morton*, 241 Kan. 698, 769 P.2d 616, 620 (1987) ("[T]he elements necessary to the creation of a valid trust are . . . (1) [a] declaration and intention to create a trust, (2) [a] description of the property, and (3) [the] trustee's handling and acceptance of the subject matter as a trust."); *In re Estate of Boyer*, 1994 NMCA 005, 117 N.M. 74, 868 P.2d 1299, 1303 (1994) ("The elements of a valid trust include a competent settlor and trustee, intent by the settlor to create a trust, [an] ascertainable trust res, a sufficiently ascertainable beneficiary or beneficiaries, a legal purpose, and a legal term."); *Hilbert v. Benson*, 917 P.2d 1152, 1157 (Wyo. 1996) ("The elements of a valid trust include a competent settlor and trustee, intent by the settlor to create a trust, [an] ascertainable trust res, [a] sufficiently ascertainable beneficiary or beneficiaries, a legal purpose, and a legal term.").[10]

More importantly, we conclude that maintaining these basic, definitional elements of an express trust is the soundest rule for the Virgin Islands.[11] Not only are these elements in conformity with virtually every other jurisdiction in the United States, but they continue to serve the basic purpose for which trust law was created: the separation of legal and equitable title in a trust property to "allow[ ] for more flexible management of property with split ownership." Glicksman, 44 TULSA L. REV. at 180.

---

[10] *See also Carrillo v. Taylor*, 81 Ariz. 14, 299 P.2d 188, 197 (1956); *In re Estate of Stokes*, 1987 OK 119, 747 P.2d 300, 302 (1987); *Wynekoop v. Wynekoop*, 407 Ill. 219, 95 N.E.2d 457, 460 (1950); *Palozie v. Palozie*, 283 Conn. 538, 927 A.2d 903, 910 (2007); *Brinkley v. Patton*, 194 Okla. 244, 149 P.2d 261, 264 (1944); *Sieling v. Sieling*, 151 Md. 536, 135 A. 376, 381 (1926); *Pollock v. Brown*, 569 S.W.2d 724, 729 (Mo. 1978); *Schug v. Michael*, 310 Minn. 22, 245 N.W.2d 587, 591 (1976); *Cabaniss v. Cabaniss*, 464 A.2d 87, 91 (D.C. 1983); *In re Steck's Estate*, 275 Wis. 290, 81 N.W.2d 729, 734 (1957); *In re Gaines' Estate*, 15 Cal. 2d 255, 100 P.2d 1055, 1060-61 (1940); *In re NFO Members' Custodial Account*, 255 N.W.2d 162, 164 (Iowa 1977); *Wirt v. Super. Ct. for Spokane Cnty.*, 10 Wn.2d 362, 116 P.2d 752, 755 (1941); *Sanford v. Cowan*, 249 Miss. 685, 163 So. 2d 682, 686-87 (1964); *Miller v. Teachout*, 24 Ohio St. 525, 532 (1874); *State v. Exch. Bank of Ogallala*, 114 Neb. 664, 209 N.W. 249, 252 (1926); 76 AM. JUR. 2D *Trusts* § 18.

[11] Although the common law elements of an express trust we adopt here are the same as those recounted in the Restatement, this should not be interpreted as a wholesale adoption of any version of the Restatement of Trusts, and this holding in no way validates the Superior Court's statement that the "Restatement (Second) of Trusts [is] the governing body of trust law in the Virgin Islands." Despite the unanimity regarding the basic elements of a trust, there is significant disagreement among common law jurisdictions in a number of areas of trust law — each of which will require further examination under the *Banks* factors.

■■ ■■ Applying the elements of an express trust — requiring (1) a valid conveyance of a trust property, (2) from a settlor who intends to create a trust, (3) to a trustee to hold legal title (4) for the benefit of third party beneficiary — to the December 11, 2008 warranty deed, the deed complied with these requirements by conveying the trust property (identified as Parcel Nos. 173B-60, 173B-61, and 173B-61A Estate Anna's Retreat) from Harrigan to King to hold "in trust for Winston Liburd." Even though the deed does not specify for what purpose King is to hold the property in trust for Liburd, where a deed transfers a property "in trust" for another but is silent on the terms of the trust or the duties of the trustee, a court may consider evidence outside of the writing. *See Snow, Christensen & Martineau v. Lindberg*, 299 P.3d 1058, 1067 (Utah 2013) ("[I]n ascertaining the intention of the settlor[, the court] may consider the entire instrument aided by the surrounding circumstances existing at the time of creation of the trust." (internal quotation marks and citation omitted)); *Schaneman v. Wright*, 238 Neb. 309, 470 N.W.2d 566, 574 (1991) (where the conveyance is silent, "extrinsic evidence may be admitted to show how the transferee was intended to hold the property"). Here, King submitted affidavits from himself and Harrigan stating that the property was transferred in trust for the purpose of selling it and dividing the proceeds according to the July 14, 2008 agreement. Therefore, the warranty deed's failure to state explicitly the purposes of the trust is not a fatal defect.

In holding otherwise, the Superior Court took issue with the fact that the trust appeared to provide a greater benefit to King than Liburd, who was "saddle[d] . . . with mortgage payments in return for merely a share of the fourth priority disbursement of the trust property's liquidation."[12]

---

[12] The Superior Court also took issue with what it characterized as "unethical" behavior by King, who serves as trustee while simultaneously acting as counsel for both the settlor and the beneficiary. We share the Superior Court's concern. The Virgin Islands Rules of Professional Conduct — like the Model Rules of Professional Conduct in force before February 1, 2014, *see* Prom. Order No. 2013-0001 (V.I. Dec. 23, 2013) — state that a concurrent conflict of interest exists where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." V.I. RULE PROF'L CONDUCT R. 211.1.7(a)(2); *see In re Maynard*, 60 V.I. 444, 449 (V.I. 2014) ("[A] concurrent conflict of interest exists, so as to preclude representation, 'if . . . there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.' " (quoting MODEL RULES PROF'L CONDUCT R. 1.7(a)(2))). It seems clear that serv-

But as King points out, Liburd agreed to pay the mortgage on the property in the July 14, 2008 agreement — in which Harrigan agreed to commence legal proceedings to take exclusive possession of the property, sell it, and divide the proceeds between himself, Liburd, and King — several months before the warranty deed creating the trust was signed on December 11, 2008. The trust document itself did not impose any duties on Liburd at all, instead the terms the Superior Court appeared to be concerned with were imposed in the previous agreement. So by dismissing King's attempt to enforce the trust, and holding that Harrigan remained the owner of the property, the Superior Court did not absolve Liburd of his contractual obligation to pay the mortgage, but instead made it more likely that Liburd will not be able to recover the money he has put toward the mortgage from the proceeds of the sale, as contemplated in the July 14, 2008 agreement. Accordingly, the Superior Court erred in holding that King failed to allege facts giving rise to a trust, refusing to hold a default judgment hearing, and dismissing King's action with prejudice. Therefore, we reverse and remand this case to the Superior Court to hold a default judgment hearing as required by Superior Court Rule 48.

## IV. CONCLUSION

The December 11, 2008 warranty deed met all the requirements of a valid trust, designating a trust property, a trustee, and a beneficiary, and was a valid conveyance of the property under the Virgin Islands Code. Consequently, the Superior Court erred in holding that the trust property was never conveyed to King and that the trust was otherwise invalid. Therefore, we reverse the Superior Court's November 30, 2012 order dismissing King's eviction action and remand this case for the Superior Court to hold a damages hearing on King's motion for default judgment.

---

ing as trustee, while simultaneously representing the interests of beneficiary Liburd and settlor Harrigan, could give rise to such a "significant risk" of material limitation of King's representation of one of these clients due to his concurrent responsibilities to them both or his own personal interest in this matter. Nonetheless, an attorney may continue representation despite this concurrent conflict if — among other things — "each affected client gives informed consent, confirmed in writing." V.I. RULES PROF'L CONDUCT R. 211.1.7(b)(4); *see* MODEL RULES PROF'L CONDUCT R. 1.7(b)(4) (outlining identical requirements regarding concurrent conflicts). Although King has provided this written consent from Liburd, he has not done so for Harrigan.